## THE STATE v. PIERCE.

1. In an indictment for malicious mischief in killing a domestic animal, the name of the owner should be disclosed, or it should at least be stated that the animal *was the property of some one*, though the name was unknown; if there was no known proprietor, the killing will not.constitute malicious mischief.

THE defendant was indicted in the Circuit Court of Ràn-dolph, for unlawfully, wilfully, and maliciously, killing, by shooting with a rifle gun, a certain spotted bull of the value of twenty dollars, belonging to some person to the jurors un-known. To this indictment was entered the plea of not guilty, and the issue being submitted to a jury, a verdict of guilty was returned, and judgment rendered accordingly for the fine as-sessed, of twenty- five dollars, &c.

At the request of the defendant, certain questions were re-ferred, as novel and difficult, to this Court, for its decision, which may be thus stated, viz : 1. The killing of the animal referred to in the indictment, was proved, but there was no proof of his ownership, or that he belonged to any body; he had been at large in the neighborhood for several years, with-out any owner or claimant. There was no proof of malice to-wards any one, but there was some evidence of the mischiev-ous character of the animal, and of particular acts of mischief. The Court charged the jury, that the killing of the animal des-cribed by one not its owner, would make out the offence charg-ed, unless the defendant satisfied them he had provocation. If

it was shown by the proof, either that the bull was a mischievous animal, or had done, or offered, injury to the defendant, then they would be justified in considering that proof, in order to determine whether the defendant had acted cruelly or wantonly ; and if they were convinced that the act was not committed under the influence of such· feeling, then they should find for the defendant. *Further*, the Court charged, that malice would be inferred from the killing, unless the defendant showed a provocation. 2. It was moved in arrest of judgment, that the indictment was insufficient, but this motion was overruled.

G. W. GUNN, for the defendant, contended, that it was essential to the indictment, that it should have alledged who was the owner of the animal, with the killing of which the defendant was charged. The proceeding, though in form criminal, is yet intended for the benefit of the party aggrieved, and his name should be disclosed, that it may be seen who is entitled to the fine—and his name must be known, (at least to the accused,) or there can be no malice cherished towards him. [Clay's Dig. 417, § 5, 418, § 7; The State v. Garner, 8 Porter's Rep. 447.] Malice is a necessary ingredient of the offence; this is abundantly shown by the construction placed upon English statutes similar to our own. [Arch. Crim. Pl. 283 ; King v. Austin, 1 Eng. Crown Cases, 490 ; 2 Easts C. L. 1072-3.] Mere wantonness, or cruelty, will not sustain an indictment for malicious mischief.

ATTORNEY GENERAL, for the State, made the following points : 1. If the indictment cannot be supported under the statute, it is good at common law, and malicious mischief is an offence independent of statute. [1 Dall. Rep. 335; 1 Mass. Rep. 58; 5 Cow. Rep. 259; 1 Aik. Rep. 226; 1 P. A. Brown's Rep. 251 ; 1 Ov. Rep. 305; 19 Wend. Rep. 419 ; see also the form of an indictment in 3 Chit. C. L.; 2 Easts C. L. 1074; State v. Wheeler, 3 Verm. Rep.

2. The charge of the Court was correct; for several of the above citations will show, that proof of express malice is not necessary, but is inferable from the wilfulness, wantonness and cruelty of the act. Under the statute of 9 Geo. 1 Chap. 22, it has been held that malice is necessary to constitute the offence ;

but it must be recollected that the offence punished by that act is made "felony without the benefit of clergy," and stricter proof of course would be required than in the present case, where the offence is a mere misdemeanor. The common law declares, "that every act of a public evil example, and against good morals, is an indictable offence;" and this principle embraces the case stated in the indictment.

COLLIER, C. J.—It is enacted by the fifth section of the fourth chapter of the Penal Code, that "If any person shall unlawfully, wilfully, and maliciously kill, or disable, any horse, mare, or gelding, colt or filly, ass or mule, or any goat, sheep, or cattle, or any hog or live stock, of any kind or description whatever, belonging to any other person; or shall," &c. "every person so offending, shall, on conviction of any of the aforesaid offences, be fined in a sum equal to five fold the value of the property injured or destroyed," &c. The seventh section of the same chapter provides, that "the fines imposed in the three last preceding sections, for the offences therein mentioned, shall be paid to the party injured." [Clay's Dig. 417-8.]

The 9 Geo. 1, ch. 22, commonly called the Black Act, declares, "If any person or persons, whether, &c., shall unlawfully and maliciously kill, maim, or wound, any cattle, or shall, &c. every person so offending, being lawfully convicted thereof, shall be adjudged guilty of felony without benefit of clergy," &c. It was the settled construction of that statute, that in order to bring an offender within its provisions, malice must be directed against the owner of the cattle, and not merely against the animal itself. [2 Easts Crown L. 1072-4.] In Shepherd's case, 2 Leach's C. L. 609, it was held, that proof of dislike to a particular horse, and the mischief committed after the master's refusal to let him have another, was not sufficient to bring the case within the Black Act; though the prisoner had before threatened the injury, if his master would not let him have the other horse.

So it has been determined that an indictment at the common law, would not lie for unlawfully, and with force and arms, maiming a horse, to the great damage of his owner, and against the peace. Such charge, it was adjudged, only imported a trespass—the words *vi et armis* not implying sufficient force to support an indictment. [2 East's C. Law, 1074.]

The construction placed upon the English statute has never been departed from by the Courts of that country. True, the law in respect to malicious mischief has been remodelled by the 7 & 8 Geo. IV. c. 30; the 25th section of which enactment declares, that the offences denounced shall be punished, whether they were "committed from malice conceived against the owner of the property," or not. [Step. Crim. L. 191, 203.] The terms employed by the Black Act, of which malice is predicated as a constituent of the offence, are not more potent than those employed in our statute, but are substantially the same, if not identical. Our first act upon the subject of malicious mischief, as well as that we have cited from the "Penal Code," were both passed in reference to the English statute, and long after its construction had been settled and known. This being the case, it is proper, that the interpretation of the latter, so far as the phraseology of our statute makes it applicable, should exert a strong, if not a controlling influence. Hence we have no doubt that malice against the owner of the animal, alledged to have been killed, is an essential element of the statutory offence. From this view of the law, it would seem necessarily to follow, either that the owner's name should be disclosed in the indictment, or that it should at least be stated that the animal was the property of some one, whose name was unknown. The evidence should show that there was an owner, and who he was, but it is not indispensable to a conviction, in such case, that the defendant, previous to the commission of the act, declared a purpose to injure the owner, or did, or said, any thing, either before, or after, indicative of express malice. Malice is inferable, frequently from the circumstances under which the mischief was committed; thus if the act was committed wantonly, when the defendant was cool, or if excited, was angry without a cause, or his anger proceeded from a cause which could not naturally have manifested itself in the violence done. In these and other cases, the jury would be authorized to imply malice, and find the accused guilty.

It results from this view, that the indictment is defective, and the ruling of the Court was not in harmony with the law. The judgment of the Circuit Court is therefore reversed, and the defendant will appear at its next term, and answer such further charge, (if any,) as may be made against him; unless he shall be otherwise legally discharged.