No. 2.—JAMES TAYLOR, plaintiff in error *vs.* THE STATE OF GEORGIA, defendant in error.

[1.] An indictment, charging that the defendant "did maliciously express, "print, and publish, and cause, and procure to be expressed, printed and pub-"lished," a certain libel, appearing as an advertisement in a newspaper, (set out in the indictment *in hæc verba*,) *though signed by a third person*—is sufficiently certain, in alleging the publication, without alleging that the same was written by such third person.

[2.] An allegation, that the defendant published a libel, "*tending to blacken the honesty, virtue, integrity and reputation of the said R. M. G., and thereby to expose him to public hatred, ridicule and contempt, in which said false, scandalous, malicious and defamatory libel, there were, and are contained, certain false, scandalous, malicious, defamatory and libellous matter of and concerning the character, honesty, virtue, integrity and reputation of the said R. M. G.*" is a sufficient allegation that it was "*of and concerning R. M. G.*"

Taylor *vs.* The State of Georgia.

[3.] The question, of how far the publication was *malicious*, having been properly submitted to the Jury, and they having found that there was malice, a new trial will not be granted. As to how far a publication may be justified, in protection of legal rights—see opinion of Judge Fleming.

[4.] As a matter of practice, the libel should not be read to the Jury, until the defendant has cross-examined the witness, proving its publication.

Indictment for Libel. Tried before Judge FLEMING in Chatham Superior Court, May Term, 1847. Motions in arrest of judgment, and for New Trial, successively overruled.

The indictment was predicated upon the following advertisement, which was published in the " *Savannah Daily Republican,*" a newspaper published in the city of Savannah, to-wit:

" NOTICE.—Credible information being given me, that R. M. " Goodwin is about selling a negro, or negroes, under a certain " deed obtained by him from my mother, Mrs. Julia Scarborough, " I hereby notify and warn all persons, from purchasing or in " any manner encumbering the same, as the said deed is illegal, " from causes known to Mr. Goodwin, from papers on record, " and in his, and my possession." "CHARLOTTE TAYLOR."
" Savannah, Dec. 30th, 1846."

The indictment alleged, that on the 30th day of December, A. D. 1846, the plaintiff in error, with force and arms, in the county of Chatham, in this State, did wickedly and maliciously express, print and publish, and cause and procure to be expressed, printed and published, a certain false, scandalous, malicious and defamatory libel, in the form of an advertisement, in the columns of a newspaper, published in the city of Savannah, in the county aforesaid, known by the name of the " Savannah Daily Republican," *tending to blacken the honesty, virtue, integrity and reputation of the said Robert M. Goodwin, and thereby to expose him to public hatred, ridicule and contempt, in which said false, scandalous, malicious and defamatory libel, there were and are contained, certain false, scandalous, malicious, defamatory and libellous matter, of and concerning the character, honesty, virtue, integrity and reputation of the said Robert M. Goodwin.*" (Here the libel was set out.) The first count then concluded in these words: " to " the great damage, scandal, and disgrace of the said Robert M. " Goodwin, and contrary to the laws of said State, the good order, " peace and dignity thereof."

The second count in the indictment sets forth the libel in substance. The colloqium is the same as in the first count.

Upon the trial, Charles Davis, a witness for the prosecution, was examined, and proved, that he was one of the editors of the " Savannah Daily Republican," that the defendant put the notice in the advertising box, told witness so himself after publication, and also told witness that the words " *three insertions*" on the paper was in his (Taylor's) hand writing, and paid witness for one insertion, and said it had had the effect intended, and that more insertions would be unnecessary. The State here offered the libel in evidence, to the admission of which, the defendant's counsel objected, until the defence should be permitted to cross-examine the witness, as to the fact of publication, which the Court decided could not be done, until the direct examination had closed.— The defendant then objected to the libel being read, on the ground of a variance between it and the description of it in the indictment, which objection was overruled and the libel read to jury. At the foot of the manuscript advertisement were the words, " 3 *insertions—Editors of Republican,*" in defendant's hand writing. The witness Davis further proved that the publication occurred in the city of Savannah, and that Charlotte Taylor was wife of defendant.

Upon the cross examination the witness testified that defendant said the publication had had its effect, that there were certain papers which would have to be brought into court, by which means they would come to light. Witness did not know, whether conversation was after prosecution had been commenced. Witness had heard of the prosecution.

The testimony on the part of the State having closed, the defendant's counsel, by way of justification, and to prove the truth of the alleged libel, and to negative the charge of malice, and show that the publication was with a view to the defence of the legal rights of defendant's wife, submitted the following proof:

Joseph Scarborough testified that he was at Taylor's house; had conversation with Charlotte Taylor in presence of defendant; asked for furniture, which she refused. Witness said if furniture was not given, he, witness, and his mother, Mrs. Julia Scarborough, would sell one of the negroes. Did not know that Goodwin intended to sell; never heard him say so. Witness meant negro that Goodwin held in trust; he afterwards spoke with Goodwin about his conversation with Mrs. Taylor.

Robert M. Goodwin, the prosecutor, testified that a negro woman, Peggy, had been deeded to him in trust, and exhibited the deed of trust, which was read in evidence. This deed was from Mrs. Julia Scarborough, to Goodwin, and conveyed the negro Peggy, with divers others, to Goodwin, in trust, for the donor during her life, subject to her debts then owing, she to receive the income and profits arising from the labor of said slaves, and to control them, except so far as regards sale, devise, or disposition, repugnant to the provisions of the deed, and after her death, to be divided by sale or otherwise, into five equal parts, one portion or part to be delivered to the then living child or children of Charlotte Taylor, not to be subject to the control of Charlotte Taylor or her husband, the defendant, &c. The witness Goodwin further testified, that the negroes in the deed of trust mentioned, belonged to Mrs. Scarborough, as he understood. The deed was made at her request. Witness was not present, when the deed was made.— Witness believed she had a right to convey, and whenever seen by witness, she was in condition to convey. He did not threaten to sell in 1846.

Mrs. Julia Scarborough sworn, testified that the negroes named were her property, being descendants of a negro, given her when a few years old, on the occasion of her baptism; that she requested Goodwin to act; that she did not know the contents of the deed; that she thought it was a power of Attorney; and had confidence in Goodwin.

She understood that Goodwin could not sell unless for her benefit.

On the part of the State it was then proven that the deed of trust was read to Mrs. Scarborough. In the opinion of the witness she was competent to convey. Her attention was directed to the trusts of the deed.

The jury rendered a verdict of guilty. The Counsel for the defendant moved in arrest of the judgment, and also for a new trial.

In arrest of Judgment :—

1st. Because the alleged libel is not introduced or set forth in said indictment, with sufficient certainty, as a libel expressed, written, printed or published, by the defendant.

2d. Because, it is not in said indictment sufficiently or certainly alleged, that said alleged libel was expressed, written, printed, or published, of and concerning the prosecutor, Robert M. Goodwin.

3d. Because said indictment is generally too informal, uncertain, and insufficient, for the purpose of a conviction, or a judgment upon such a conviction.

And for a new Trial:

1st. Because, after the evidence of Charles Davis, a witness for the prosecution, had closed, his Honor refused to permit the defendant to cross-examine said witness, to the fact of publication, or any other fact, until the alleged libel had been by the prosecution, read to the Jury.

2d. Because the verdict of the Jury is contrary to law and evidence.

On which motions in arrest of judgment and for a new Trial, the presiding Judge in the Court below delivered the following opinion:

| THE STATE *vs.* JAMES TAYLOR. | *Indictment, Libel, Verdict, Guilty.* |

Motion in arrest of judgment, and also for a new trial.

The first ground of the above motion in arrest of judgment, is in the following words: " Because, the indictment is fatally defec- "tive , and no legal judgment can be given on said conviction; in "that the alleged libel in said indictment mentioned, is not in- "troduced or set forth in said indictment, with sufficient certainty, "as a libel expressed, written, printed and published by the de- "fendant."

[1.] The indictment charges, that on a certain day, the defendant did wickedly and maliciously express, print and *publish*, and cause and procure to be expressed, printed, and published, a certain libel which is set out in full, and which is an exact copy of the libel offered in evidence. This fact relieves the indictment from the case of *Cartwright vs. Wright,* (7 E. C. L. R. 210). In that case the libel offered in evidence, differed from the libel described in the declaration, and the variance was held to be fatal, because the meaning of the libel offered in evidence materially differed

Taylor *vs.* The State of Georgia.

from that set out in the declaration. Such is not the fact here the libel offered in evidence is an exact copy of that set out in the indictment, and therefore cannot differ from it. The case of *Bell vs. Byrne*, I think may be disposed of in the same way, (13 *East,* 554). The declaration in that case contained six counts : In the first four counts, the defendant was charged with having printed and published the libel on the plaintiff, " *as and purporting to be in a letter written from A. to R. O' C."* Now what was the libel or publication offered in evidence to sustain these counts ? When the objection was first made, that these four counts could not be supported, because they charged the publication of the libellous matter as purporting to be contained in a letter from A. to R. O'C. : Lord Ellenborough seems to have doubted, but we afterward find him saying—" I have now no difficulty in stating that upon an attentive review of the publication, the libellous matter is not stated as part of the letter of R. O'C.; but as part of the speech of the Irish attorney general in commenting upon it." The manner, therefore, in which the libel is alleged in the first four counts, as part of the letter, *is not a true description of it.* The declaration in those four counts described the libel, as part of the letter from A. to R. O'C.—the libel offered in evidence was part of the speech of the Irish Attorney General. There clearly was a misdescription of the libel. No such misdescription exists in the case before me. The two last counts charged the defendant with having stated generally, that the plaintiff had been for *some time* past confined in England, on a charge of high treason. The proof differed from this allegation in two respects:     1st. The proof was, not that the defendant had said so, but of an assertion by him, that the Attorney General of Ireland had said so.     2d. The libel described and set forth in the declaration was, that the plaintiff had been confined for high treason, some time immediately preceding the date of publication, to wit : 15th May, 1810; the libel offered in evidence, was that the plaintiff had been confined for high treason some time previous to the speech of the attorney general, (viz.) previous to the 19th of February, 1799. In reference, then, to these two last counts, the same difficulty existed—the libel described, was not the libel offered in evidence. *Grose, J.,* says, the libellous matter charged, is referred in the publication to the speech of the Irish Attorney General, and therefore is not truly described in any of the counts of the declaration. But in the case before me,

the libel described, and the libel offered in evidence, are identically the same; it is truly described. Nor is there any want of certainty, in charging the publication of it on the defendant. The indictment expressly charges, that the said James Taylor did wickedly and maliciously express, print, and publish, and caused, and procured, &c. Does the fact that the libel is signed by Charlotte Taylor, at all conflict with the charge in the indictment, that the defendant expressed, printed and published it. It is not charged that he wrote or signed it, but that he expressed, printed and published it. There is no uncertainty as to what is charged to have been published; no uncertainty as to the person, who is charged with the publication. If there is sufficient certainty, as to the libel, and the libeller, there is, it seems to me, sufficient certainty upon which a legal judgment in the case may be rendered.

[2.] The second ground is: Because it is not in said indictment sufficiently and certainly alleged that said alleged libel was expressed, written, printed and published, "of and concerning" the prosecutor, R. M. Goodwin. The question which arises on this ground of the motion, is not that it should sufficiently appear on the face of the indictment, that the libel was published of and concerning Robert M. Goodwin; but whether in point of fact it does appear. In order to this, it is conceded, that it should be averred that the libel was *of and concerning* him, or some words equivalent. Without this or some equivalent averment, there is nothing to which the inuendoes can be referred. The office of an inuendo is to explain something going before. The expression, (meaning the said Robert M. Goodwin,) will not supply the want of this introductory averment. Does this indictment contain the necessary averment, to which the inuendo, "meaning the said Robert M. Goodwin," can be referred in explanation? On looking to the indictment, we find the averment, that the defendant published a libel tending to blacken the honesty, virtue, integrity, and reputation of the said Robert M. Goodwin, in which said libel, there were and are certain false, scandalous, malicious, defamatory, and libellous matters, "*of and concerning*" the character, honesty, virtue, integrity, and reputation of the said Robert M. Goodwin. May not the inuendo, "meaning the said Robert M. Goodwin," be referred to this introductory averment, that the libel contained matters of and concerning the character of the said Robert M. Goodwin? If the averment had been of and concerning the said Rob-

ert M. Goodwin, the argument would not have been had. Is not the expression used, of equivalent import? Can you libel a man's character without libelling the man himself? Can you speak of and concerning a man's character, and yet say nothing of and concerning the man himself? The distinction attempted in the argument, I confess, is too subtle for my comprehension. A man's character, it seems to me, is the best part of him, and when you speak of his character you necessarily speak of him. What would you think of a defendant, who would put his defence upon the ground, that he had libelled the prosecutor's character, but not the prosecutor himself. And yet this defence might well be, if the distinction now contended for is just. It is then my opinion that the introductory averment in this indictment, that the libel contains libellous matter of and concerning the character, &c., of Robert M. Goodwin, is an averment to which the inuendoes may be referred. These inuendoes, therefore, do not add new matter, but properly discharge the office of the inuendo, in explaining something that has gone before. I have not particularly criticised the authorities to which I have been referred, although I have read them carefully, because the legal proposition of the defendant's counsel is admitted to be law, and in all the cases in which the indictment was adjudged to be insufficient, the indictment had neither the words " of and concerning," nor any words of like import. Such is not the fact in the indictment before me. The motion in arrest of judgment is therefore refused.

The first ground of the motion for a new trial is in these words : " Because after the evidence of Charles Davis, a witness for the prosecution, had closed, his honor refused to permit the defendant to cross-examine the said witness, as to the fact of publication, or any other fact." The fact as it occurred, is not correctly set forth, in this ground of the motion. The direct examination of Charles Davis *had not closed*, when counsel insisted upon his right of cross-examination, and my decision was, that the cross-examination could not commence, until the direct examination had closed. The libel, on being shown to the witness, was identified by him, as the libel which the defendant had put into the advertising-box, and on which the defendant had written " 3 *insertions*," " *Editors of Republican.*" The witness received the information from Taylor himself, after the publication in the paper. He also testified that Taylor, the defendant, paid for one

insertion, and said that the publication had had the effect intended, and that more insertions were unnecessary. The paper was then offered in evidence, and objected to, on account of discrepancy: the objection was overruled and the paper read to the jury. I am unable to see any thing in the above facts which entitles the defendant to a new trial; nor am I able to see anything as stated in the grounds of the motion, which entitles the defendant to a new trial. For according to my view, after the libel had been identified, and the defendant connected with it, by proof that he had put it in the advertising-box, and had written the direction to the Editors to insert it three times, and had after the publication, stated farther that one insertion having had the effect intended, more insertions were unnecessary, and actually paid for the one insertion, that the prosecution had a right to have the libel read to the jury. No cross-examination, *as to the fact of publication, or any other fact*, could make it proper to withhold the libel from the jury. The fact of publication is a matter for the determination of the jury, and any circumstances, which might explain the defendant's connection with the libel, so as to release him from guilt, were circumstances of which the jury should judge, and could not furnish any legal ground of withholding the libel from the jury. For the purposes of the defence, the cross-examination as to the fact of publication and as to other facts, is as good after the libel has been read to the jury, as it could be before it is thus read, unless indeed it be the idea of counsel, and such from his argument I presume is his idea—that it is the duty of the judge, when the libel is offered in evidence, to determine first, if the defendant has published the libel; and second, if he has published it, whether he published it under circumstances which relieve him from guilt. In other words, on the trial of an indictment for libel, whenever the libel is offered in evidence, it is the duty of the judge to declare his opinion of the guilt or innocence of the defendant, by the admission or rejection of the testimony. As judge I have not so understood my duty. The second ground of the motion for a new trial is, "because the verdict of the jury is contrary to law and evidence." From the argument of counsel I learn that the verdict is contrary to law, because the court admitted illegal testimony, and I further learn, that the illegal testimony referred to, is the admission of the libel. It is argued that the libel ought not to have been admitted, because it is not set forth in the indict-

ment.   This is precisely the question, I have already determined, while considering the motion in arrest of judgment.   The doctrine in the case of *Bell vs. Byrne*, and other cases to which I have been referred, is not disputed, viz: that the libel offered in evidence, must correspond with the libel set out in the declaration or indictment.   And the only question is, whether the libel now offered in evidence, corresponds with the libel set out in the indictment.   The argument of counsel is that it does not, because the libel offered in evidence, being signed by Charlotte Taylor, is proof of an assertion or publication by the defendant, that Charlotte Taylor had said these things of the prosecutor, whereas the indictment charges the defendant, with saying or publishing these things himself.   I think that I have stated the argument in its full force, and I will assume the argument to be true, that the signature of Charlotte Taylor to the libel offered in evidence, is proof that the publication of James Taylor is, that Charlotte Taylor had said so.   Now apply the same reasoning to the indictment. If the signature of Charlotte Taylor to the libel, is proof that the libel of James Taylor is, that Charlotte Taylor had said so, then the signature of Charlotte Taylor set out in the indictment, is an averment, that the libel of James Taylor is that Charlotte Taylor said so.   Whatever effect the signature of Charlotte Taylor has out of the indictment, it must have the same effect in the indictment.   The English language cannot express more emphatically, that this libel purported to be signed by Charlotte Taylor, than is in the *fac simile* of the libel with Charlotte Taylor's signature.— If the signature of Charlotte Taylor to the libel proves what counsel says it does prove, then the signature of Charlotte Taylor to the libel set out in the indictment, proves the averment, or rather is itself an averment, in the indictment, such as counsel says is necessary.   But all this argument is unnecessary.   The question is whether the libel offered in evidence corresponds with the libel set out in the indictment.   We lay the one by the other, and compare them, and we find that each is a *fac simile* of the other.— Do they not correspond?   Let common sense answer.   Upon what principle could I rule out this testimony?   The argument at the trial, and on this motion is, rule it out on the ground of discrepancy.   I can only say, if there is any discrepancy I have been, and am now too stupid to see it.

[3.]   The latter branch of this ground of the motion is that the

verdict is contrary to evidence, and the argument is that it is contrary to evidence, because no malice was proven at the trial; and that no malice was proven, because the advertisement was for protecting the legal rights of defendant's wife, a matter in which he was interested. I have been referred to *Delany vs. Jones*, (4 *Esp.* 191,) and *Hargrove vs. Le Breton*, (4 *Burr.* 2422.) Authority on this subject is unnecessary. But the question here is, if the advertisement did not unnecessarily reflect upon the character of the prosecutor? You may advertise, and the advertisement may convey an imputation, injurious to another's character, and yet you may be innocent of the crime of libel, but that imputation must be necessary to effect the *bona fide* purpose of the publication. The moment you transgress the limits, necessary for effecting the legal and *bona fide* object of your advertisement, you are guilty, unless you can prove the truth of your publication. Now was it necessary, in order to protect the legal rights of Mrs. Taylor, that the advertisement should charge upon the prosecutor, that "he had obtained from Mrs. Scarborough a deed, which *he knew to be illegal*, and under colour of which he was about to sell certain property?" From the testimony of Mr. Davis, it would seem, that the very object of the publication was, to provoke a prosecution, for the purpose of bringing to light certain papers. Was this necessary for the protection of any legal rights. If not, was there any testimony to prove that the prosecutor obtained from Mrs. Scarborough, a deed, which *he knew to be illegal?* The true answer to this ground of the motion, however, is this, that it has reference to questions belonging exclusively to the jury. I did not decide them at the trial, nor am I disposed to decide them now. I charged the jury, at the trial, that malice was essential— that malice consisted in the intention of the party to do the particular mischief, that the legal presumption was, that the party intended that which he did do; but that explanatory circumstances might rebut the presumption; that it would be a good defence, for example, to show that the libel was published *bona fide*, with the view of protecting the legal rights of Mrs. Taylor, *provided the limits* necessary for protecting those rights, had not been exceeded; that a lawful occasion could not be used by any one, for the purpose of venting his malice; that if he did, he was bound to prove that his assertions were true. Upon these points the jury have passed, and they have found against the

Taylor *vs.* The State of Georgia.

defendant. With that finding I cannot interfere. The motion for a new trial is refused. W. B. FLEMING, J. E. D. Ga.

To which decision the Defendant excepted, and has assigned the same as error.

E. J. HARDEN—for Plaintiff in error.

Sol. Gen'l GAULDEN and M. H. McALLISTER, for Defendant in Error.

*By the Court*—WARNER, J. delivering the opinion.

This case comes before us on a bill of exceptions to the decision of the court below, refusing to sustain the defendant's motion in arrest of judgment, and to grant him a new trial. We have carefully examined the written opinion of the presiding Judge in the Circuit Court, contained in the record, overruling the defendant's motion on both the grounds taken.

[4.] While we are of the opinion it would have been more regular, as a matter of *practice*, to have permitted the defendant's counsel to have cross-examined the witness introduced to prove the publication of the libel, before giving in evidence the libel to the jury; yet we do not think the defendant was deprived of any legal right, because the Court permitted the paper to be read to the jury, before the defendant's counsel had cross-examined the witness. The fact of publication, was a question for the jury to decide, and the defendant was not prevented by the Court from fully cross-examining the witness concerning that fact.

The motion for a new trial, and in arrest of judgment, was in our opinion properly overruled by the Court below, for the very satisfactory reasons contained in the written decision of the presiding Judge, transmitted with the record before us. Let the judgment of the Court below be affirmed.