[Haley v. The State.]

# Haley *v.* The State.

*Indictment for Slander of Female.*

63   83,
99   235.
63   83·
108   55

1. *Statement of name of third person in indictment.*—It is not good matter for a plea in abatement, that, in stating the name of a third person in an indictment, the initial letter of his Christian name is used, instead of the name itself.

2. *Misnomer; plea in abatement as to.*—The defendant being indicted by the name of "*Zack, alias Zachariah,*" and pleading in abatement that his true name was *Zacary;* and the evidence showing that, while his true name was *Zacary,* he was generally known and called by the name of *Zack,* which some of the witnesses supposed was an abbreviation of his true name ; *held,* that the court did not err in instructing the jury, "if they believed from the evidence that he was generally and as well known by the name of *Zack* as any other," they must find the issue against the defendant ; nor in refusing to charge, at the instance of the defendant, "that if he was called and known by the name of *Zack,* as an abbreviation, or initial of his proper name, and that his proper name was *Zacary,* and not *Zachariah,* or *Zack,*" they must find the issue for the defendant.

3. *Impeaching and sustaining witness.*—When a witness is interrogated, on cross-examination, as to former inconsistent declarations, and denies that he made them, he may state, in rebuttal, what he did say on the particular occasion specified.

4. *Same.*—When a witness has been impeached by proof of former declarations inconsistent with his testimony, his credibility may be sustained by proof of his general good character.

5. *Same.*—It is permissible to prove a previous dispute between the accused and a witness for the prosecution, as tending to show the existence of unfriendly relations between them ; but, when the subject of the dispute has no connection with the offense for which the accused is on trial, the witness cannot be impeached by the contradictory testimony of others.

6. *Proof of character; competency of witness.*—A witness, who states that "he knows the general character of the defendant from rumor," is not competent to testify in reference to it.

7. *Slander of female, by words imputing want of chastity ; malice as element of offense.*—To authorize a conviction for the slander of a female by words "falsely and maliciously imputing to her a want of chastity" (Code, § 4107), it is not necessary that the accused should have entertained any special personal malice towards the person defamed : if the words are false, naturally tend to the injury of the person defamed, and were spoken recklessly, though without special ill-will, a conviction may be had.

FROM the Circuit Court of Lee.

Tried before the Hon. W. B. WOOD.

The indictment in this case charged, that the defendant, " Zack, *alias* Zachariah Haley, did falsely and maliciously speak of and concerning Mollie Goins, in the presence of J. McLendon, charging her with a want of chastity, in substance as follows : that the said Mollie Goins was whoring about through the country ; against the peace," &c. The defendant filed two pleas in abatement, each duly verified ; the

first averring "that his true name is, and always has been since his birth, Zacary Haley, and he has never been known or called either Zack or Zachariah Haley;" and the second, "that the name of the party mentioned in said indictment, to whom, or in whose presence, the defendant is alleged to have made use of the alleged slanderous language, is James McLendon, and not J. McLendon, as charged in said indictment, and that he has never been known or called by any other name." The court sustained a demurrer to the second plea; and issue being joined on the first, it was submitted to a jury for trial. On the trial of this issue, as the bill of exceptions recites, "the defendant introduced his father as a witness, and also two other persons who had known him from his birth, and knew his Christian name, which was Zacary Taylor; that his family and neighbors called him Zack 'for short,' and as an abbreviation of his true name. The defendant also introduced his father's 'Family Bible,' containing the record of the births of his children, in which the defendant's was thus entered: ' Zacary Taylor Haley, Jan. 1, 1845.' The State then introduced several witnesses, who swore, that they had known defendant for a number of years, and had only known him by the name of Zack; and that he answered to that name when called. Some of these witnesses stated, that while they did not know defendant by any other name than Zack, yet they always supposed it to be an abbreviation of his true name; while others of them swore, that they knew him alone by the name of Zack. This was all the testimony on the plea in abatement;" and the court thereupon charged the jury, "If the jury believe, from the evidence, that the defendant is generally and as well known by the name of Zack as any other, they will find for the State." The defendant excepted to this charge, and then requested the court to give the following charges, which were in writing: 1. "If the jury believe, from the evidence, that the defendant was known and called by the name of Zack as an abbreviation or initial of his proper name, and that his proper name was Zacary, and not Zachariah, or Zack, as charged in the indictment, then they must find the issue on the plea for the defendant." 2. "If the jury believe, from the evidence, that the defendant's true name was Zacary, and that he was only called Zack 'for short,' or as an initial or abbreviation, they must find for the defendant, although it may appear that many persons did not know what his true name was." The court refused each of these charges, and the defendant excepted to their refusal. The jury found the issue against the defendant, and he then pleaded not guilty; on which issue was joined, and a trial had.

During the trial, the defendant reserved several exceptions to the rulings of the court as to the admissibility of evidence, and also an exception to the refusal of one of the charges asked by him; but the material facts in reference to these matters are stated in the opinion of the court, and it is not necessary to state them in this place.

GEO. D. & GEO. W. HOOPER, and GEO. P. HARRISON, for the defendant, cited *Lawrence v. The State*, 59 Ala. 61; *Dupree v. The State*, 33 Ala. 380; *Sorelle v. Craig*, 9 Ala. 534; and *Northcot v. The State*, 43 Ala. 330.

H. C. LINDSEY, with the Attorney-General, for the State.

STONE, J.—The Circuit Court did not err in the rulings on the pleas in abatement. The court rightly sustained the demurrer to the second of those pleas, and ruled correctly on the issues formed on the first.—*Franklin v. The State*, 52 Ala. 414; *Gerrish v. The State*, 53 Ala. 476. *Zack* is not an initial letter. It may be a name; and the jury found he was as well and readily known by the one name as the other. The testimony tends to show he was much more generally called and known by the abbreviated name, than by any other. The question is important only as a means of individualization, and of identification, should subsequent proceedings render the inquiry necessary. The case is unlike that of *Lawrence v. The State*, 59 Ala. 61.

3. The witness McLendon, introduced by the State, was asked, on cross-examination, if he had not, at a given time and place, made a certain statement to one Chappell, touching the matter of his evidence, which was variant from the testimony he had given. He answered, that he had not. In rebuttal, this witness was permitted to testify what he did say to Chappell on that occasion, and the defendant excepted. There is nothing in this exception. A witness who is sought to be impeached, by proof of prior contradictory statements, is entitled to have the matter brought to his attention, during his examination on the witness stand. Until he is so interrogated, it is not permissible to prove his prior contradictory statements. The purpose and policy of this rule are, that the witness proposed to be assailed in this way, may have an opportunity of explaining it, and of showing what he did say. It then becomes a question of recollection between the witnesses, if both are inclined to speak the truth. 2 Brick. Dig. 548, §§ 117 to 121, inclusive.

4. Chappell having been afterwards introduced, and having testified to prior variant statements by McLendon, it was

permissible to sustain the credibility of the latter, by proof of his general good character.—2 Brick. Dig. 547, § 104.

5. The testimony of a previous dispute between the witness McLendon and the accused, concerning cotton-seed, was only important as showing the relations, friendly or otherwise, between them. While it was lawful to prove this alleged dispute or quarrel, either by McLendon or any other witness, as tending to show unfriendly relations between the witness and the defendant, the relevancy of the evidence extended no further. The dispute, and its subject, had no connection whatever with the offense for which the defendant was on trial. Hence, it could not be the ground of impeaching the witness, by contradictory testimony of other witnesses.—*McHugh v. The State*, 31 Ala. 317; 2 Brick. Dig. 549, § 125; *Bullard v. Lambert*, 40 Ala. 204; 1 Greenl. Ev. §§ 462, 469.

6. The witness Matthews was asked, " if he knew the general character of the defendant in his neighborhood, from rumor." This question the court allowed to be answered, and defendant excepted. The witness said, he knew said character from rumor, and that it was bad. The defendant had previously introduced witnesses, whose testimony tended to prove his good character. Character is the estimation in which one is held in the community; reputation—the estimate put upon him. This estimate may be just or unjust, true or false; still, it is character. It is judged by many things, some of which it would be difficult, if not impossible, to define. All the authorities admit, that what the public generally say of a person, and the manner in which he is received and treated in society, are among the tests by which his character is determined. When a witness knows this character, although he may have no personal knowledge of any act of his life, he is competent to testify in regard to it. But, these are not the only sources of the witness' information. He may know his character, although he never heard it canvassed, and does not even know a majority of his neighbors.—*Hadjo v. Gooden*, 13 Ala. 718; *Martin v. Martin*, 25 Ala. 201; *Ward v. The State*, 28 Ala. 53. If he says he knows his general character in the neighborhood in which he lives, this is enough, unless it is shown, on cross-examination, that he does not understand the question, and has not the requisite knowledge.—*Bullard v. Lambert*, 40 Ala. 204. But rumor is not always reputation. The word has many meanings. Its most common and accepted signification is, a flying report, traceable to no known or responsible source. Hence, a knowledge of character, derived from rumor, may be no more nor less than that furnished by a flying report,

brought to the knowledge of the witness. He may know nothing of the estimate in which the person of whom he testifies is held, beyond that which is brought to him by a flying report. Still, a non-professional witness, having only this information, might ignorantly and innocently answer that he knew the general character from rumor. All legal practitioners have encountered difficulty, in bringing to the comprehension of witnesses the legal import of the words general character, when they became the subject of inquiry. We think the question and answer copied above should not have been allowed.—*Sorelle v. Craig*, 9 Ala. 534; *Campbell v. The State*, 23 Ala. 44. We do not think the court erred in any other ruling on the admission of evidence.

7. The defendant was indicted under the first clause of section 4107 of the Code of 1876, which declares, that "any person who writes, prints, or speaks, of and concerning any female, falsely and maliciously imputing to her a want of chastity, . . . shall be deemed guilty of a misdemeanor." It is contended for defendant that, to constitute this offense, the accused must have entertained malice towards the female slandered; and he asked the court to so instruct the jury, which was refused. The charge refused, which raises this question, is in the following language : "Malice to the party defamed is an essential ingredient of the offense charged; and the defendant must have used substantially the words charged, with this malice, otherwise the jury must find for the defendant." "Malice," says Mr. Bishop, "in general phrase, is never understood to denote general malevolence, or unkindness of heart, or enmity towards a particular individual; but it signifies rather the intent from which flows any unlawful and injurious act, committed without legal justification."—1 Bish. Cr. Law, 6th ed., § 429. This definition of malice is supported by a long line of able decisions. It is that evil mind that intentionally violates the law, without the moral sanction of honest conviction supported by probable cause, to excuse it. When the words or acts are groundless, intentionally wrong, or reckless, and tend naturally to the injury of another in some right which the law has secured to him, this is malice, whether the offender entertained ill-will to the person injured or not. Under the peculiar phraseology of our statute punishing malicious mischief, and the disposition which the law makes of the fine on conviction, it has been ruled that, to insure conviction under that statute, there must be malice to the owner of the animal injured.—*The State v. Pierce*, 7 Ala. 728; *Northcot v. The State*, 43 Ala. 330. But, see *Hill v. The State, Ib.* 335, where it is said, "as the killing was with an instrument, the use of

[Haley v. The State.]

which commonly destroys life, malice might well be inferred by the jury." The charge in that case was, "unlawfully and maliciously killing a hog, the property of Betty Ray."

In the case of *Rex v. Hunt*, indicted under the English statute for "maliciously cutting" one Cambridge, the proof tended to show that the malice was towards Headly, and that the prisoner cut Cambridge without intending it. The case was reserved, and went before the judges of England. The judges ruled, that "general malice was sufficient under the statute, without particular malice against the person cut."—1 Moody, 93.

In *Salmon's case*, 1 Russ. & Ryan, 26, the indictment was for "voluntarily, willfully and maliciously setting fire to the haystack of one John Catling." Defendant was convicted, and the case went up on questions reserved. All the judges of England "were of opinion, that the conviction was right; . . . that it was not necessary that there should be malice against the real owner of the hay."

In the case of *Com. v. Snelling*, 15 Pick. 321—indictment for a malicious libel—the court, C. J. SHAW delivering the opinion, said: "It is not necessary, to render an act malicious, that the party be actuated by a feeling of hatred or ill-will towards the individual, or that he entertain and pursue any bad purpose or design. On the contrary, he may be actuated by a general good purpose, and have a real and sincere design to bring about a reformation of manners; but, if, in pursuing that design, he willfully inflicts a wrong on others which is not warranted by law, such act is malicious."

Under the statute of North Carolina to prevent malicious maiming, it was decided, Justice RUFFIN being the author of the opinion, that the words of the statute "do not mean an actual, express, or preconceived disposition; but import an intent, at the moment, to do, without lawful authority, and without the pressure of necessity, that which the law forbids." Of similar import are *Com. v. Bonner*, 9 Metc. 410; *The State v. Doig*, 2 Rich. S. C. 179; *Com. v. Green*, 1 Ashm. 289; *Dexter v. Spear*, 4 Mason, 115; *Taylor v. The State*, 4 Ga. 14: *Griffin v. Chubb*, 7 Tex. 603.

In *Long v. Rogers*, 19 Ala. 321—a suit for malicious prosecution—this court said: "It is well settled, that to sustain this action, there must be malice, as well as a want of probable cause. But, when the law speaks of malice in this connection, it does not imply that there should be actual ill-will, or a desire to injure the party prosecuted through revenge or spite. If the prosecutor, in the entire absence of any probable or reasonable grounds justifying even a suspicion of the party's guilt, sets the prosecution on foot, the legal

[Haley v. The State.]

implication of malice necessarily arises."—*Durr v. Jackson*, 59 Ala. 203.

The Circuit Court did not err in refusing to give the charge copied above. The court erred in refusing to give the charge numbered 7, asked by defendant; but the record fails to show this ruling was excepted to. We find no other errors in the record.

Reversed and remanded. Let the defendant remain in custody, until discharged by due course of law.