# Johnson v. The State.

### Murder.

(Decided September 7, 1916. Rehearing denied October 19, 1916. 73 South. 210.)

1. **Witnesses; Impeachment; Crime.**—A statement by a witness that he was convicted of shooting a man does not show that he was convicted of an offense involving moral turpitude, since such conviction might have been for an assault and battery, and hence the date was immaterial.

2. **Same; Examinaion.**—Where a witness had admitted that he was convicted for shooting a man, a question to him as to how long he was in the

[Johnson v. The State.]

penitentiary was objectionable as assuming that he was convicted of a felony.

3. Same.—It is proper to sustain objections to question as to the conviction of crime of a witness to which irrelevant and illegal evidence would have been responsive.

4. Same; Defendant and Witness.—Where a defendant has offered himself as a witness, it is permissible for the state to offer evidence of his general bad character, by way of impeachment.

5. Same; Character.—Where a witness was asked as to whether he knew defendant's general character in the community in which he lived, the question was proper in form, and the objection thereto was properly overruled, although the answer was not responsive, no objection having been taken to the answer.

6. Same.—The question "Would you say from what other people said that you know his character?" was proper as calling for an estimate of defendant's character, from what people generally said about him, and not what particular people had said, especially where defendant and witness had lived near each other four or five years.

7. Homicide; Evidence; Corroboration.—The evidence in this case in corroboration of the testimony of an accomplice held sufficient to carry the case to the jury.

8. Same; Aiding and Abetting.—Where it was not disputed that deceased was killed by another in front of defendant's house, and that defendant was present, it was a question for the jury whether defendant aided and abetted in the killing; for, although defendant must have contributed to the result, no particular acts were necessary, if by prearrangement, or with the knowledge of another, he was present to assist if it became necessary.

9. Charge of Court; Invading Jury's Province.—Charges asserting that what defendant might have said if deceased was killed, would not be evidence as to his aiding and abetting before the killing was done, invaded the province of the jury, and was properly refused.

10. Same; Covered by Those Given.—The cause will not be reversed for the refusal of charges which are substantially covered by the charges given.

11. Same; Argumentative.—Charges asserting that the law is no respecter of persons or color, and that the jury cannot take into consideration defendant's color in making up its verdict, are argumentative and properly refused.

(Brown, J., dissenting.)

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

(This cause was reviewed by the Supreme Court on certiorari, and the writ denied. See *Ex parte Johnson*, 198 Ala. 700, 73 South. 1000.)

William Johnson was convicted of murder in the second degree, and he appeals. Affirmed.

Defendant was charged with having killed Lewis Brown by shooting him with a gun. It seems that Tom Oldacre was introduced by the state, and on his cross-examination he was asked the question: "Were you ever convicted?" and he answered: "Yes, sir; for shooting a man." He was then asked: "When was that?" Objection was sustained, and he was asked: "How long were you sent to the pen?" Objection was sustained to that question.

The following charges were refused to defendant:

(1) Affirmative charge.

(2) What defendant might have said after Lewis Brown was shot would not be evidence as to aiding and abetting before the killing was done.

(3) As fair-minded and honest men, the law enjoins upon you, gentlemen, the imperative duty of giving defendant the benefit of every reasonable doubt arising from the evidence before you can find him guilty.

(4) Although you may believe from the evidence that remarks were made by defendant after the death of Lewis Brown, that is no evidence that he aided or abetted in the killing of said Lewis Brown.

(5) The law is no respecter of persons, and you cannot take into consideration the color of defendant, but you must look to the facts alone as detailed by the witnesses on the witness stand in determining his guilt or innocence.

(6) The law is no respecter of persons or of color, and you cannot take into consideration color in making up your verdict.

C. L. PRICE, for appellant. W. L. MARTIN, Attorney General, and HARWELL G. DAVIS, Assistant Attorney General, for the State.

BROWN, J.— (1) It does not appear that the offense of which the witness Tom Oldacre was convicted was infamous or involved moral turpitude; therefore the materiality of the date of his conviction does not affirmatively appear.—*Williams v. State*, 144 Ala. 14, 40 South. 405; *Moore v. State*, 12 Ala. App. 243, 67 South. 789. For all that appears, the conviction might have been for an assault and battery.—*Gillman v. State*, 165 Ala. 135, 51 South. 722.

(2) The question, "How long were you sent to the penitentiary?" assumes, in the absence of proof, that the witness had been convicted of a felony.—*Moore v. State, supra.*

(3) Furthermore, irrevelant and illegal evidence would have been responsive to the question, and the court properly sustained the solicitor's objection thereto.—*Williams v. State, supra; Ross v. State,* 139 Ala. 144, 36 South. 718.

(4) After the defendant testified as a witness, it was permissible for the state to offer evidence of his general bad character for the purpose of impeaching his credibility.—*Cox v. State,* 162 Ala. 66, 50 South. 398; *Mitchell v. State,* 14 Ala. App. 46, 70 South. 991.

(5) The solicitor's question to the witness Robinson, "Do you know William Johnson's character in the community in which he lives?" was in good form, and elicited legal and relevant testimony, and the defendant's objection was not well taken. The answer was not responsive, but no objection was taken to the answer. The record contains the following statement: "Mr. McGhee, being recalled in behalf of the state, testified as follows: 'I have never heard William Johnson's character discussed. Q. Would you say from what other people say that you know his character?' *Defendant objects to what other people say,* and the court overrules objection, and defendant duly excepts to the ruling of the court. Witness answered, 'Yes,' and then said: 'From what other people say, it is bad. I don't remember if I heard anybody say anything about him lying. I heard Mr. Brown, the father of Lewis Brown [the man alleged to have been murdered], say his reputation was bad.'"

The only reasonable construction that can be placed on the objection above italicized, when considered in connection with the question against which it was directed, is that the defendant objected to the witness giving his estimate of the defendant's character "on what people say." The answer, "Yes," was responsive, and constituted the predicate for the defendant's opinion, "From what people say, it is bad." If the predicate was proper, it is manifest that the opinion was proper. The objection goes to the very root of the matter—the competency of the witness to give his opinion—and therefore, if the objection was erroneously overruled, a motion to exclude the testimony of the witness given on a false predicate was not necessary to properly raise and present the question for review. If the matter had

stopped with the answer by the witness to the question constituting the predicate, the result would have been error without injury, but when the witness is allowed to give his opinion as to the character on the false predicate, the result is reversible error. The test of the competency of witnesses to testify to general character is laid down in the following cases: *Haley v. State*, 63 Ala. 83; *Sullivan v. State*, 66 Ala. 48; *Child's v. State*, 55 Ala. 28; *Cauley v. State*, 92 Ala. 72, 9 South. 456. In *Haley v. State, supra*, the witness was asked "if he knew the general character of the defendant in his neighborhood from rumor." The trial court overruled an objection made to this question, and on appeal the case was reversed because of this ruling. In *Sullivan v. State, supra*, it was said: " 'All the authorities admit that what the public *generally* say of a person, and the manner in which he is received and treated in society, are among the tests by which his character is determined. * * * But these are not the only sources of the witness' information. He may know his character, although he never heard it canvassed, and does not even know a majority of his neighbors.' Reputation is unquestionably a source from which character is ascertained and determined. But, as we have shown, it is not the only source of information on which the conclusion is based."

There is a vast difference between what "the public *generally* say of a person and the manner in which he is received and treated" in a community and "what people say." "What people say" may be mere vague rumors, idle report, or fugitive gossip not traceable to any known or responsible source, not forming a legitimate basis for a proper estimate of character.—Underhill, Crim. Evidence, § 81; *Haley v. State, supra; Dave v. State*, 22 Ala. 23. It is no answer to this proposition that the witness lived by the defendant for a sufficient length of time to know his character, although he never heard it discussed, and, under the holding of the majority of the court, was thus made a competent witness to testify and give an estimate of defendant's character on knowledge of his character thus acquired. The question does not call for an opinion on this basis, but on the basis of what other people say, and the testimony develops the fact that the only person that the witness had ever heard say anything about the defendant's character was the father of the deceased. For the reasons above stated, and on the authority of *Haley v. State*, the writer entertains the opinion that reversible error was com-

mitted in overruling the objection to the question to the witness McGhee.

(6) My Brothers do not concur in this view, but hold that the objection was not to the question, "Would you say from what other people say that you know his character?" but to what other people might say of his character. Fairly construed, the question was proper as calling for an estimate of the defendant's character from what other people generally said of it in the neighborhood in which he lived. The witness was further shown to be qualified to testify to the character of the defendant, as it was shown that he had been "living by" (a neighbor to) the defendant for four years.

(7) The circumstances of the killing, the finding of the body in the defendant's yard, and the defendant's conduct after the killing and up until the body was found and at that time were circumstances corroborative of the testimony of Levi Oldacre, the alleged accomplice, and was sufficient corroboration of his evidence to authorize the court to submit the case to the jury.

(8) The evidence shows without dispute that the deceased was shot and killed by Levi Oldacre in the front of defendant's house; that defendant was present, and it was a question for the jury on the evidence as to whether or not defendant "aided and abetted in the killing." While to be guilty of aiding and abetting the commission of the offense the defendant must have contributed to the result, no particular acts were necessary, if by prearrangement or with the knowledge of Oldacre he was present to render assistance if it became necessary.—*Jones v. State,* 174 Ala. 56, 57 South. 31; *State, ex rel. Attorney General v. Talley,* 1C2 Ala. 65, 15 South. 722; *Raiford v. State,* 59 Ala. 106.

(9-11) Charge 1 was properly refused. Charges 2 and 4 were invasive of the province of the jury. Charge 3 was substantially covered by the given charges. Charges 5 and 6 were argumentative.

The judgment is accordingly affirmed.

Affirmed.

BROWN, J., dissenting.