Appellant was convicted of murder in the first degree of his wife and sentenced to imprisonment for life.
The evidence shows without conflict that the victim was killed almost instantly in the home of the married couple by shots from a pistol. There was strong evidence, direct and circumstantial, that the pistol was fired at the victim by the defendant intentionally, deliberately, maliciously and with premeditation. On the other hand, there was some evidence, consisting of testimony of defendant and corroborated by some of the circumstances, that tended to show that the pistol was discharged accidentally while defendant and his wife were scuffling over the pistol, and that tended to show that defendant was acting in self-defense. The evidence in its most favorable light to defendant presented a jury question on the issue of his guilt as raised by his plea of not guilty. Appellant makes no contention to the contrary.
Defendant also pleaded not guilty by reason of insanity. There was a definite conflict in the evidence on that issue with some witnesses, expert and lay, testifying he was insane and some that he was sane. That issue was also one for the determination of the jury, and there is no contention to the contrary.
No further discussion of the evidence would be of value, other than such as may shed some light upon legal questions presented on appeal, which we now consider.
Appellant takes the position that the trial court was in error in permitting in evidence an incriminating statement made by him about eighteen hours after the homicide. There was considerable evidence that defendant was intoxicated at the time of the homicide and at the time he was arrested and taken to jail about one hour thereafter, at which time he signed an incriminating statement. However, the statement signed by him the night of the homicide was not offered in evidence. Appellant argues that the statement signed by defendant some eighteen hours after the homicide, which was some sixteen hours after the first statement was made, was infected by the vitiating quality of the first statement.
No effort was made to show an incriminating statement or confession by defendant during the course of the presentation of the State's case. While defendant was testifying on cross-examination, counsel for the State for the first time referred to such statement. Immediately thereafter, the court excused the jury and conducted a preliminary hearing on the question of the admissibility of such statement or statements. The court concluded and ruled that the statement made the night of defendant's arrest was not admissible, but that the subsequent statement was admissible. Neither party seemed to contend otherwise as to either, and any issue between the parties as to the admissibility of the second statement was certainly not well delineated by either party.
Although the question is now presented for the first time as to whether the second statement was the infected fruit of a poisonous tree, we conclude that it was not. The sole basis for the rejection of the first statement was the intoxication of defendant. There was no force, express or implied, no improper inducement, no coercion of any kind, and defendant was fully advised and warned as to all of his pertinent constitutional rights. In concluding that the first statement was not admissible by reason of the state of defendant's intoxication, the court impliedly determined that he was so intoxicated at the time that he *Page 466 
was "unconscious of the meaning of his words." Medders v.State, Ala.Cr.App., 342 So.2d 49 (1977); Balentine v. State, Ala.Cr.App., 339 So.2d 1063, cert. denied Ala., 339 So.2d 1070
(1976); Scott v. State, Ala.Cr.App., 333 So.2d 619 (1976). Such conclusion should logically dispel the notion that the relation of cause and effect existed between the making of the first statement and the making of the second.
Cagle v. State, 45 Ala. App. 3, 221 So.2d 119, cert. denied284 Ala. 727, 221 So.2d 121 (1969), is readily distinguishable, in that in making the second statement in Cagle, defendant said, "I have already given the Chief a statement [held inadmissible for failure to warn and advise him of his rights], and I might as well give one to you, too." 221 So.2d 120.
Appellant bases another claim of prejudicial error upon action of the trial court during the testimony of David R. McBride, Jr., a witness for the State on rebuttal of evidence presented by defendant tending to show he was insane. After the witness had identified himself as a next-door neighbor of defendant for approximately four years and had seen him "about every day," the following occurred:
 "Q Saw him about every day. Do you have an opinion as to whether or not, based on your observing Mr. Kennedy for four and a half years, living next door to him, do you have an opinion as to whether or not he was suffering any mental disease?
"MR. LOVELESS: I object, Your Honor.
"THE COURT: Overruled. Perfectly admissible.
 "Q In other words, was he suffering from any mental disease or was he — was he sane or insane, in your opinion?
 "MR. LOVELESS: Object again and state for the record he's not trying to be an expert in any way. No predicate laid for this.
 "THE COURT: It's not necessary in the State of Alabama to be an expert, which I will charge the jury. Go ahead. Overruled.
 "A Well, not to me. Like I say, I just spoke to him, mostly. We had one run in one time . . . (unintelligible), you know.
 "MR. LOVELESS: Excuse me, I couldn't understand what he said.
"A I said we had one run in once.
 "Q Well, I asked this, the question, was he insane or was he not insane, in your opinion, your own opinion?
"A Not to me.
"Q Not to you he wasn't."
The quoted portion of the record lacks desirable clarity to enable us to appraise it with fairness to all concerned. As to the first question to which an objection was made, it is to be noted that it was never answered, even though an objection to it was overruled. It is also to be noted that there was no specific ground of objection. As to the second question, which seems to contain two questions in the alternative, the objection in part was that "he's not trying to be an expert in any way. No predicate laid for this." Such objection was apparently construed by the court as implying that a non-expert witness could not testify as to the sanity of another. We should note also that after the last ruling of the court on the matter, counsel for the State asked the witness another question substantially the same as one of the alternatives of the immediately preceding question, and there was no objection to the succeeding question. Furthermore, it was repeated. No objection was made to the repetition, and his answer was repeated.
The law is clear that a notion to the effect that only an expert witness can testify that in his opinion another is sane is erroneous. It is also clear that a lay witness should not be allowed to testify that another is sane unless it is shown that he had an adequate opportunity to observe the person and had not observed any abnormal or irrational acts on his part.
 "It is a generally recognized exception to the opinion rule that a witness, lay or expert, may give his opinion as to the sanity of another person.
". . . *Page 467 
 "We have seen that, as a condition precedent to a lay witness opinion that another is sane, it must first be shown that the witness had an adequate opportunity to observe the person and that he has not observed any abnormal or irrational acts of such person. . . ." Gamble, McElroy's Alabama Evidence, § 128.01 (1977).
Irrespective of whether the witness had been sufficiently qualified to express an opinion that defendant was sane, it appears to us that, in considering the grounds of objections stated, the court was probably justified in concluding that defendant was objecting on the ground that the witness was not an expert and that the language in the objection, "No predicate laid for this," was referable to the predicate necessary to qualify one as an expert witness.
To complete the picture as to any prejudicial error in connection with the testimony of this particular witness, we should also state that upon cross-examination of him, he disavowed an opinion as to the sanity or insanity of defendant. His testimony on cross-examination was rather lengthy, but part of it, without contradiction with any other part, was as follows:
"Q Oh, you didn't say he was sane?
"A No, I didn't.
". . .
 "Q Do you know what it means to be sane, what the term sanity refers to?
"A I've never been there before.
 "THE COURT: If a person is sane they are normal, like everybody else. If a person is crazy, they are different from everybody else. Okay?
 "Q You consider Willie to be normal like everybody else?
 "A Tell you the truth, I couldn't say, like I say, all I did was speak to him.
"Q You couldn't say?
"A All I did was talk to him, like I say."
Notwithstanding the ambiguity of the witness' testimony, for which he was not solely responsible, it is clear that it was not harmful to either party. Whether erroneously admitted or not, it was innocuous.
At the conclusion of the direct examination of defendant as a witness, he was asked, "Willie, have you ever been convicted of a felony," to which his answer was, "No, sir." From that question and answer State's counsel proceeded to interrogate him as to his understanding of the meaning of the word "felony," and defendant volunteered that he had never been convicted of a crime. His testimony on cross-examination continued as follows:
 "Q You are not including every possible thing that you could have been charged with, are you?
 "MR. LOVELESS: Now, I'm going to object. If he knows he can only ask about crimes — felonies involving moral turpitude and misdemeanors cannot be inquired into.
"THE COURT: He has the right to question the
Defendant. Any objections, I'll rule on them.
"MR. LOVELESS: All right, let him ask the question.
 "Q Are you saying that you have never been charged with any crime? Is that what you are saying?
"MR. LOVELESS: I object to that.
"THE COURT: I sustain the objection.
"Q Do you understand what a felony is, Mr. Kennedy?
 "MR. LOVELESS: If the State has a felony involving moral turpitude, let them produce it.
"THE COURT: No, no, he has a right to ask questions.
"Q Do you understand what a felony is, Mr. Kennedy?
"A No, I don't believe I do."
There was no further objection by defendant to questions asked on cross-examination until the following:
 "Q Now, getting back to when you said you had never been convicted of any crime . . .?
"MR. LOVELESS: He didn't say that.
"Q Well, are you saying that?
 "A Well, I been convicted of a lot of things, you know, I didn't do, you know.
 "Q What was your answer to that? I didn't hear it. *Page 468 
"MR. LOVELESS: Your Honor, he heard it and it's now prejudicial. He knows he cannot go into misdemeanors. Move for a mistrial.
"THE COURT: Denied."
Appellant says there was error in the court's denial of the motion for a mistrial.
In cross-examining a witness for the purpose of impeaching him by showing the commission of a crime involving moral turpitude, care should be exercised so as not to include an offense that does not involve moral turpitude. A failure to observe this principle resulted in a reversal in Johnson v.State, 15 Ala. App. 298, 73 So. 210, cert. denied, 198 Ala. 692,73 So. 1000 (1916) and in other cases noted in Gamble,McElroy's Alabama Evidence, 145.01 (17) (1977). Whether the question asked defendant by his counsel as to any conviction of him for a felony, which could include crimes not involving moral turpitude, triggered the questions by State's counsel that were not limited to crimes involving moral turpitude may be debatable, but every objection made by defendant to a question answered by him as a witness was sustained by the court.
The only ruling adverse to defendant in connection with the cross-examination of defendant on the subject of any prior conviction was the denial of defendant's motion for a mistrial. In moving for a mistrial, counsel for defendant stated, inter alia, "He knows he cannot go into misdemeanors." The statement is obviously incorrect. The felony-misdemeanor dichotomy is not the test. Moral turpitude vel non is the sole criterion. Ala. Code 1975, § 12-21-162. Moreover, we conclude there was nothing so highly prejudicial in any part of the cross-examination of defendant on the subject, which to some extent was introduced by defendant, as to justify a mistrial. The motion therefor was properly denied.
We have searched the record for error prejudicial to defendant and have found none. The judgment appealed from should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.