136 So.2d 264 (1961)
STATE of Florida, Appellant,
v.
Frank TRAFFICANTE, Augustine Primo Lazzara, William H. Bowes, and C. Ray Smith, Appellees.
No. 1889.
District Court of Appeal of Florida. Second District.
December 20, 1961.
Rehearing Denied January 10, 1962.
*265 Richard W. Ervin, Atty. Gen., Edward S. Jaffry, Asst. Atty. Gen., and Phil O'Connell, Acting State Atty. for the Sixth Judicial Circuit, West Palm Beach, for appellant.
Mark R. Hawes, St. Petersburg, for appellees Frank Trafficante and Augustine Primo Lazzara.
Loyd C. Mosley, Clearwater, for appellee William H. Bowes.
Richard T. Earle, Jr., St. Petersburg, and Chester Bedell, Jacksonville, for appellee C. Ray Smith.
KANNER, Judge.
Appellees-defendants were by jury verdict found to be not guilty of four counts of bribery with which they were charged in an amended information. They were found guilty under a fifth count predicated upon section 833.04, Florida Statutes, F.S.A.,[1] interdictory of conspiracies to commit noncapital felonies. A prior trial before the same judge resulted in a mistrial. Defendants, after the verdict in the second trial, moved for judgment of acquittal notwithstanding the verdict and for new trial. After consideration of the motions, the trial judge ordered that the fifth count be quashed, that the judgment upon that count be arrested, and that a new trial be granted in the event the fifth count were deemed upon appeal to be legally sufficient. It was additionally adjudged that defendants, in accordance with the jury verdict, were not guilty of any offense alleged in the first four counts charging bribery and they were discharged as to those counts.
Charges of bribery and conspiracy against defendants arose from events taking place between August 17, 1958, and October 24, 1958, during which period defendants met with and gave money to one Douglas A. Rodenbaugh, constable of the fifth justice of the peace district of Pinellas County. The funds in question, totaling $4,500, were alleged by the state to have been transmitted for the purpose of influencing Rodenbaugh to corruptly violate his oath of office as constable and of inducing him to allow lottery operations, commonly known as "Cuba" or "bolita," in the area of his jurisdiction and simultaneously to seek out and arrest any gambling competitors. The bribery counts, or counts one through four, are identical except for the amounts and times specified, while the fifth count, or the one for conspiracy, sets forth the same intent, purposes, and acts as charged in the first four counts.
Defendants, admitting that money in the named total had been given to Rodenbaugh, urged that the gifts were not made for an illicit purpose but that instead the money was no more than a campaign contribution for valid political purposes, to aid Rodenbaugh in his election campaign for the office of sheriff of Pinellas County in which he was engaged during most of the period designated.
Review sought is pursuant to and comes within the purview of section 924.07, Florida Statutes, F.S.A., authorizing an appeal by the state in a criminal action under certain conditions. The quashed fifth count, about which the issues revolve, charged in essence, that the defendants conspired to:

*266 "* * * commit offenses against the laws of the State of Florida, to-wit: to violate Section 838.01 of Florida Statutes Annotated pertaining to bribery and to violate Section 849.09, sub section 1(A), and Section 849.09, sub section 1(D) of Flordia Statutes Annotated pertaining to lotteries * *"
Three basic issues are presented as to the quashed count and the granting of the motions for new trial. The first advances the question of whether the fifth count is duplicitous and, if so, whether this is fatal and whether it is so indefinite and confusing that it leaves doubt as to what offense is charged. The trial judge deemed that section 833.04, Florida Statutes, F.S.A., proscribing conspiracies to commit other than capital felonies, through its enactment introduced a new element into the law of conspiracy, and he interpreted it as rendering such conspiracies subject to similar rules of pleading as are applicable to other crimes. The fifth count was stated to set out two or more substantive offenses conspired to be committed, with different penalties, and was thereby considered duplicitous. Cited as authority for this premise was an early Florida decision, McGahagin v. State, 1880, 17 Fla. 665, wherein it was held that an indictment charging two distinct offenses within one count for which different punishments were provided by statute was bad and judgment thereon would be arrested. The cases of Smith v. State, 1898, 40 Fla. 203, 23 So. 854, and Hamilton v. State, 1937, 129 Fla. 219, 176 So. 89, 112 A.L.R. 1013, were also cited as sustaining and adhering to this principle. The trial court by its order asserted that it was unable to say with any degree of certainty whether one, two, or three offenses were charged to have been conspired to be committed, indicating that the penalties for the offenses of bribery and lottery operations are materially different.
It is defendants' position that count five charges two conspiracies, as well as the substantive offense of bribery, and that the count is therefore duplicitous. Conversely, the state urges that a single offense was in fact clearly set forth and charged in the fifth count and that this offense was one single conspiracy to violate two statutes of this state, that dealing with bribery and that dealing with operation of a lottery, with the dual design of the conspiracy not giving rise to more than one crime.
Upon analysis, it is observed that utilization of the rule pronounced in the case of McGahagin v. State can only be predicated on the assumption that two distinct crimes are actually charged in the fifth count. Initially, the question at issue is whether the fifth count alleges two separate criminal offenses. The presence of two distinct crimes may not on this appeal be presumed as a static premise.
A large body of federal decisions bearing upon this matter supports the position of the state. Especially pertinent are two United States Supreme Court decisions. In the first, United States v. Rabinowich, 1915, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211, it was stated that a single conspiracy might have for its purpose the violation of two or more criminal laws. The second case, a later one decided by the same court, Frohwerk v. United States, 1918, 249 U.S. 204, 39 S.Ct. 249, 252, 63 L.Ed. 561, enlarged the scope of this statement to repudiate the notion that a single count in an indictment for conspiring to commit two offenses is bad for duplicity. The court, through Mr. Justice Holmes, declared, "The conspiracy is the crime, and that is one, however diverse its objects." See also United States v. Drawdy, D.C.S.D.Fla. 1923, 288 F. 567; United States v. McKenney, D.C. 1959, 181 F. Supp. 143. The state jurisdictions which have considered the rule are largely in accord. A contemporary case citing Frohwerk v. United States and pointing this up is Nisbet v. State, Tex. Crim. App. 1959, 336 S.W.2d 142; certiorari denied, 1960, 363 U.S. 829, 80 S.Ct. 1601, 4 L.Ed.2d 1524.
This principle is comprehended within the statement of the Florida Supreme Court in *267 the case of Brown v. State, 1938, 130 Fla. 479, 178 So. 153, 156, citing the Frohwerk decision and adhering to the views there expressed. The Florida court stated:
"It is well established that a single conspiracy may have for its object the violation of two or more criminal laws or two or more substantive offenses. The conspiracy is one offense and a single offense, no matter how many repeated violations of the law may have been the object of the conspiracy. And so one may not be convicted or acquitted of a conspiracy to accomplish a certain criminal act and again be put in jeopardy for the trial for the offense of the same conspiracy to commit a different criminal act."
Adverting now to the Hamilton v. State case, supra, we observe that the court, after reiterating the rule from the McGahagin case that two or more separate and distinct offenses are not properly laid in one count of an information, especially when punished differently, then quoted from 14 R.C.L., p. 194. This quotation by the court attributes as the true reason for the rule, not that two offenses charged in one count of an indictment arise under different statutes or are differently punished, but that they are in reality distinct offenses. It is continued that no matters, however multifarious, will operate to make a count double if those matters constitute only one connected charge or transaction, though the count should allege that they are connected with the same act or transaction.
The fifth count as drawn charges a violation of section 833.04, Florida Statutes, F.S.A., a conspiracy to violate section 838.01, Florida Statutes, F.S.A. pertaining to bribes and section 849.09(1) (a) and (d), Florida Statutes, F.S.A., relating to lotteries. The respective penalties for bribery and lottery violations differ.
Under section 833.04, Florida Statutes, F.S.A. the conspiracy offense is declared to be a felony and the punishment prescribed is imprisonment in the state prison for not more than one-fourth of the penalty or term which could have been imposed if the felony conspired to be committed had actually been committed, or by imprisonment in the state prison for one year, whichever may be the greater. We are of the view that the fifth count charges a single statutory transgression, one conspiracy to violate two sections of the criminal laws of Florida, there being in actuality no distinct and separate offenses. Although the punishment clause of section 833.04 is based upon the penalty which could be imposed if crimes conspired to be committed had actually been perpetrated, the fact that the two here charged under the conspiracy carry different penalties does not make the count bad for duplicity, since a single conspiracy may have for its object the violation of two or more criminal laws. See Hamilton v. State, supra; John Gund Brewing Co. v. United States, 8 Cir., 1913, 206 F. 386; People v. Welch, 1928, 89 Cal. App. 18, 264 P. 324; 15 C.J.S. Conspiracy § 85, p. 1119. As there is only one conspiracy charged, only one sentence can be imposed. Indeed, had the state separated the charge into two counts, alleging in one a conspiracy to violate the lottery laws and in another a conspiracy to bribe, a conviction upon both counts could not have resulted in separate punishments for separate convictions. Under such a situation, the court could impose only a sentence on the count which charges the higher grade or degree of the offense. See Simmons v. State, 1942, 151 Fla. 778, 10 So.2d 436. However, we do not have before us a question relating to propriety of a judgment with sentence entered on the verdict returned by the jury. We therefore hold that the trial judge erred in entering the order of quashal.
The second basic question concerns the trial judge's ruling granting new trial. He stated that his order quashing the fifth count might not be upheld by the higher courts and that he therefore felt the parties were entitled to a ruling on the second phase of the case, that is, whether the evidence *268 sustains the verdict on the fifth count. At this point, we shall first consider a matter relative to inconsistency between the verdicts of not guilty on the first four counts and guilty as to the fifth. It has been indicated that the acquittal verdicts had the effect of establishing non-existence of the intent to bribe in the first four counts, thereby refuting the conspiracy, since the intent to bribe was also the essential element of the conspiracy.
In regard to this problem of inconsistency, it was held in the case of Dunn v. United States, 1932, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161, that consistency in a verdict convicting on one count of an indictment and acquitting on others is not required, since each count is considered as if it were a separate indictment. The court concluded that the verdict might have been the result of compromise or of a mistake on the part of the jury but that verdicts cannot be upset by speculation or inquiry into such matters. The principle incorporated in the Dunn case was expressed by the Florida Supreme Court through the case of Goodwin v. State, 1946, 157 Fla. 751, 26 So.2d 898, providing the precedent by which this problem should be resolved. Thus, generally a verdict in a criminal case will not be overthrown on appeal for inconsistency. See also Manning v. State, Fla. 1957, 93 So.2d 716.
As noted, the trial judge held that the evidence was insufficient to sustain the verdict under the fifth count. The gravamen of the offense here is the criminal intent. It is required that the evidence adduced prove beyond a reasonable doubt the existence of a corrupt criminal intent to bribe Rodenbaugh to act in derogation of his official duties as constable. Under the applicable Florida conspiracy statute, section 833.04, there is no requirement that an overt act be alleged or proved.
In deciding whether the awarding of a new trial was justified, we as an appellate court are bound by the principle expressed in Cloud v. Fallis, Fla. 1959, 110 So.2d 669, that a motion for new trial is directed to the sound, broad discretion of the trial judge and that the granting of such a motion should not be disturbed in the absence of a clear showing that this discretion has been abused. With this principle in mind, we now recapitulate salient phases of the evidence.
Rodenbaugh had served as constable for the fifth justice of the peace district of Pinellas County from January, 1957, up to and during the time of the trial. After February 8, 1958, he began to consider becoming a candidate for sheriff of that county. He discussed this matter, first with Smith and later with Bowes, both of whom he had met, but indicated that he would require some financial assistance. In July, Rodenbaugh announced his candidacy for the Republican nomination and on August 9, 1958, informed Smith that his campaign was progressing rather slowly for want of financial support. On August 11, Rodenbaugh met Smith and Bowes at lunch and stated that he would require a minimum of $1,500 so as to campaign actively. A few days later, he was told that an appointment had been arranged at the Mariner Motel in Pinellas County on Sunday evening, August 17, for a meeting between Rodenbaugh, Smith, Bowes, and certain potential campaign contributors. It developed that these were Trafficante and Lazzara, to whom he was introduced for the first time at the meeting.
He testified that he became suspicious and determined that if any money were tendered, he would retain it only for use as possible evidence against defendants. He was then of the opinion that, if in conjunction with the tender of money, he were requested to do some service for defendants in the event of his election as sheriff, this request would amount to a criminal offense.
The subject of bolita operations was introduced into the conversation by Rodenbaugh, and Lazzara remarked that he could *269 not understand how certain named individuals could operate in Pinellas County but not himself and that he had a "belly full" of that county. He indicated that he would like to get started but that he did not intend to operate in Pinellas County. To this, Bowes commented that "* * * bolita can never be completely stopped in Pinellas County." The sum of $500 was tendered to and accepted by Rodenbaugh, with the same amount being given upon two different occasions during the next two weeks. On the day following the meeting, Rodenbaugh informed Royce Kilpatrick, county prosecutor for Pinellas County, of the incident and turned over to him the $500, depositing the other two payments when received.
In the Republican primary held on September 9, 1958, Rodenbaugh was successful. He sought out Smith to investigate the possibility of further contributions for his campaign against a Democratic opponent. At a meeting arranged by Smith in his office between Rodenbaugh and all the defendants on September 23, the sum of $3,000 was delivered to Rodenbaugh. The subject of bolita was again discussed with similar observations being made by Lazzara and Bowes as had been made at the preceding meeting. As the conference dispersed, Trafficante urged that it be kept secret and that the parties leave separately. Bowes suggested the contributions be made to appear as a loan from a friend.
Rodenbaugh testified that at this meeting he inquired, "If I am not elected Sheriff, I will still be Constable, what do you want me to do as Constable," testifying further, "They would not give me an answer. They said there was no way of me losing the Sheriff's race." On cross examination, Rodenbaugh indicated he had been informed that he could "assist them or help them or be of some help to them" but then admitted upon further questioning that no defendant suggested that he might as constable do anything for them at any time or even that they might at some future time request him, as constable, to do something.
The $3,000 was immediately turned over to Kilpatrick by Rodenbaugh in the presence of one Quilligan, an investigator for the office of state attorney. The three men contacted State Attorney Clair Dayis relative to the matter and were told that they needed more evidence, that to show a criminal offense there must be shown the intent of defendants to influence Rodenbaugh in his capacity as constable, and that a gift or contribution to a candidate for sheriff, even though intended as a bribe in the event of his election, was not a crime in Florida.
Accordingly, Rodenbaugh, with the consent of Kilpatrick and Quilligan, arranged another meeting. On October 22, 1958, in an automobile outside the Mariner Motel, Trafficante, Lazzara, Bowes, and Rodenbaugh again met. Rodenbaugh wore a concealed tape recorder and microphone, and his excuse for the meeting was that he had been told defendants were contributing also to his Democratic opponent, which defendants denied. No further funds were given or requested. Rodenbaugh testified that the subject of bolita or lottery operations was introduced, with Lazzara commenting during the ensuing conversation that they would like to get started and then stating, "We can make some of our money back you you (sic) can get some money out of it." On cross examination, Rodenbaugh testified that he had many times asked substantially the question, "Now, gentlemen, I may not be elected Sheriff but I will still be Constable, now what do you want me to do as Constable?" Rodenbaugh admitted that he did not get an answer from defendants.
On October 24, 1958, Rodenbaugh called upon Smith in his office, again equipped with the concealed tape recorder and microphone. He testified as to their conversation, "* * * I told him, I said, now I am supposed to  I am running for *270 Sheriff. Supposing I lose the Sheriff's race, I will still be Constable. He said, that is all right, you will still be Constable, and I said also I understand these fellows want to operate in this county and he said that is what I understand, on a small basis, and that is about the extent of that conversation."
It may be pointed out here that the funds in question were accepted by Rodenbaugh as campaign contributions during the course of an election campaign. Had he been elected sheriff, he would have had authority and supervisory control over all deputy sheriffs and other like law enforcement officials of the county. As constable, he had no such authority, nor did he have any deputies or assistants. It was not until after the final $3,000 gift of September 23 had been turned over to Kilpatrick that Rodenbaugh became apprised that the acts which he was seeking to establish must appertain to himself as constable and not in the anticipatory role as sheriff. The record reveals that at no time was any direct request made of Rodenbaugh in his capacity as constable. It was Rodenbaugh who initially broached the subject of need for financial help in his race for sheriff, who later renewed the discussion and specified that he would require a stated sum for use in the primary campaign, and who approached one of the defendants for added contributions for the race against a Democratic opponent. It was also Rodenbaugh who continually introduced his status as constable into the conversations for the purpose of eliciting a request that he violate his official duties as constable. In this connection, the state does not dispute that the gifts of money to Rodenbaugh as a candidate for sheriff, if made for unlawful favors in the event he were elected, would not then have constituted an illegal act. The corrupt intent to influence the official acts of Rodenbaugh as constable must have existed at the time the money was delivered.
The evidence is principally that of Rodenbaugh. The trial judge made findings of fact in his order,[2] and pointed out that the evidence is "* * * largely, if not wholly, circumstantial." We are in accord.
To support a conviction of defendants for the criminal offense set out under section 833.04 of Florida's conspiracy statute, such evidence must not only be consistent with the guilt of the defendants but must also be inconsistent with any reasonable hypothesis of innocence. Circumstantial evidence is never sufficient to support a conviction where, after it is assumed that *271 all which the evidence tends to prove has been proved, there is another hypothesis which still may be true, the reason being that mere circumstances are clothed with the force of proof only by the actual exclusion of all other hypotheses. If the evidence yields uncertainty as to which of several hypotheses may be true or if it establishes no more than a probability favoring one hypothesis over another, this cannot be equal to proof of guilt, no matter how strong the probability may be. Where evidence leaves one with "nothing stronger than a suspicion" that defendants committed the crime, it is not sufficient to support a conviction. Mayo v. State, Fla. 1956, 71 So.2d 899.
The presumption of correctness favors the order granting the motions for new trial, and it is encumbent upon the state to make error clearly appear. From a careful consideration of the testimony in its totality, we must uphold the conclusion of the trial judge in granting the motions for new trial, since we cannot say that in so doing he exceeded the bounds of the broad judicial discretion with which he is vested.
The final aspect of the case to be considered is the question raised by the trial judge, whether the verdict of not guilty of the first four counts is tantamount to res judicata as to the fifth count. The trial court, stating that, while there is much authority holding that it is, concluded that the proper procedure would be a new trial and that if at such trial no evidence of the conspiracy is offered after eliminating the gifts, an acquittal would be indicated. This statement in anticipation of a new trial and of the circumstances which might or might not arise during the course of that trial provides no present appealable issue for this court to decide.
We have carefully considered the able presentations of counsel for the state and for the defendants, which have been of considerable assistance to us in arriving at our decision. To conclude, we hold the fifth count to be good and affirm the order of the eminent trial judge granting new trial.
Affirmed in part and reversed in part.
SHANNON, C.J., and ALLEN, J., concur.
NOTES
[1] "833.04 Conspiracy to commit other felony.  If two or more persons shall agree, conspire, combine or confederate to commit any other felony they shall be guilty of a felony and punishable by imprisonment in the state prison for not more than one-fourth of the penalty or term which could have been imposed if the felony conspired to be committed had actually been committed, or by imprisonment in the state prison for one year, whichever may be the greater.
[2] "* * * The territory served by Rodenbaugh as Constable is small in area but highly developed and peopled by lawabiding citizens of high character and would probably prove a most unfruitful field for the operation of lotteries. Rodenbaugh was the Republican candidate for the office of Sheriff, and in desperate need of money for his campaign. Defendants, Smith and Bowes, were active members of that party and were apparently anxious for this office to be filled by a Republican. Trafficante and Lazzara were residents of Hillsborough County and purportedly friends of Smith and Bowes. Their political affiliations, if any, were not disclosed. The money was paid in three payments of $500 each before the Primary election and $3,000 after it. Meetings were held by Rodenbaugh and the defendants, apparently with great secrecy, and at these meetings cuba or bolita was discussed but no demands were made upon Rodenbaugh as Constable, or as a candidate for the office of Sheriff, and no plans for the promotion of lotteries here were considered or discussed. At these meetings Rodenbaugh says that defendants, Trafficante and Lazzara, expressed wonderment that three other persons were operating bolita in this county and said that they would like to get started but that they had no such intentions because they had a `belly full' of Pinellas County since the Dietrich trials and that even if Rodenbaugh were elected Sheriff they would not operate because there would be a Democratic Governor who would keep close watch on him, a Republican Sheriff, and it would be too dangerous."