Violation of Alabama Securities Act, §§ 8-6-3 (a) and 8-6-4, Code of Ala. 1975 (four indictments); sentence: $1000 fine and eighteen months imprisonment consecutively on each charge.
In the fall of 1975, appellant sold corporate securities on behalf of National Developers, Inc., and Alabama corporation, to several farmers in Covington County. Appellant informed the purchasers that those Series "A" 12% notes would finance the construction of a fertilizer plant in nearby Elba, Alabama. The appellant was not a registered securities dealer or salesman at the time nor were the notes registered and recorded in the Register of the Alabama Securities Commission.
 I
The appellant, Joe Israel Favor, was indicted for violating Alabama's "blue sky" laws, §§ 8-6-3 (a) and 8-6-4, Code of Ala. 1975. Four[1] indictments were returned against him, each containing identical counts. Upon appellant's request, these indictments were consolidated in one trial. *Page 558 
Appellant contends that the indictments were insufficient because they did not name the vendees in these securities transactions. He thus asserts that his timely demurrers to the indictments were improperly overruled by the trial court. We disagree.
The indictments precisely follow the Code forms prescribed in §§ 15-8-150 (87) and (92), Code of Ala. 1975. Section 15-8-150
commences with the statement: "The forms of indictment set forth in this section in all cases in which they are applicable, are sufficient." Both indictment Forms No. 87 and 92 particularly refer to the pertinent sections of the Alabama Securities Act under which appellant was indicted.
The issue would appear then to be whether due process requires the naming of the vendee or whether we merely accept the Code form as sufficient. It is obvious that in failing to name the vendee, an accused is not apprised of which transaction he is called upon to defend where he may have engaged in similar transactions at various times. Likewise, for purposes of double jeopardy the particular transaction should be clearly identifiable. We recognized those basic requirements of due process in Andrews v. State, Ala.Cr.App., 344 So.2d 533,cert. denied, Ala., 344 So.2d 538 (1977), in reversing the conviction for assault on one of two unnamed police officers. However, here we must follow a different rule because we are bound to follow the decisions of the Alabama Supreme Court per § 12-3-16, Code of Ala. 1975, and that court has ruled on this issue.
In Adkins v. State, 291 Ala. 695, 287 So.2d 451 (1973), a case involving the illegal sale of drugs for which there was no specific indictment form, our supreme court held that it was not necessary to name the vendee in the indictments. In support of that reasoning, the majority cited inter alia the then equivalent of current Forms No. 87 and 92 and pointed out "in no instance does the form require the name of the vendee." Chief Justice Heflin, dissenting in Adkins, commented with respect to securities indictments:
 "It would appear then that all of the form indictments for selling prohibited liquors, sales by unregistered dealers, etc., which do not purport to name the vendee are sustained under the rationale set out above, that is, since the form meets the basic constitutional requirement, it is sufficient because the legislature says so even though all material elements of the offense, i.e., the buyer, are not set out."
This court dutifully followed Adkins in Manson v. State, Ala.Cr.App., 349 So.2d 67 (1977), cert. denied, Ala.,349 So.2d 86. That case dealt with Alabama's securities laws and the sufficiency of indictments brought thereunder. This court endeavored in Manson to explain the reason for the two different standards, stating:
 "Whether the name or identity of persons other than the accused is necessary to sustain the sufficiency of an indictment has been previously resolved. . . . Generally, where the alleged crime is one necessarily involving an injury to the person or the personal right of another, or damage to property or a property right of another, the name or identity of the other must be stated in the indictment.
. . . . .
 "The reasons the name or identity of other persons is generally required usually disappear when the particular crime charged does not necessarily involve any injury to the person or property of another. As to those that do, it is to be noted that even the Code forms of indictment require in general that the name or identity of the other person be alleged; as to the other kind, the name or identity of the other is not usually required, and, when required, a reason therefor appears, which is not applicable to most of such crimes. . . ."
It therefore appears that the gist of the instant offense is the "selling" of the illegal item, and the offense does not depend upon the identity of any particular purchaser or vendee. Whereas, in crimes against the person, an injured party is an indispensable element of the offense and must be identified the same as the item sold must be *Page 559 
identified in "selling" cases. However, regardless of the rationale used, Adkins, supra, controls, and the trial court was not in error in overruling the demurrer to the indictments.
 II
Appellant submits that the trial court committed reversible error when it sustained an objection raised during cross-examination of a state employee concerning his mileage expenses. Appellant argues that cross-examination of this witness was essential to show the possible extent of his interest, bias, or prejudice.
James G. Pugh, a witness for the State, was a securities examiner with the State Securities Commission who testified about his investigation of appellant's activities. During cross-examination defense counsel offered to show by Mr. Pugh that, as a state employee, his mileage expenses were paid to travel to Covington County and testify before the grand jury and at trial. We find no error in the trial court sustaining the district attorney's objection to that line of questioning. Pugh had testified that his employer was the State of Alabama. When appellant's attorney next querried, "So, I presume from that, you draw your paycheck from the State of Alabama," the witness answered affirmatively. Any potential bias or prejudice of the witness in favor of the State was thus clearly before the jury. Therefore, cross-examination as to his mileage expenses in this case would be repetitious and argumentative.Atwell v. State, Ala.Cr.App., 354 So.2d 30 (1977), cert. denied, Ala., 354 So.2d 39; Ball v. State, Ala.Cr.App.,337 So.2d 31 (1976), cert. denied, Ala., 337 So.2d 39. The Alabama Supreme Court in State v. Howington, 268 Ala. 574, 575,109 So.2d 676 (1959), stated:
 "[T]he latitude and extent of cross-examination is a matter which of necessity rests largely within the sound discretion of the trial court, and rulings with respect thereto will not be revised on appeal except in extreme cases of abuse. . . ."
In the instant case we are not persuaded that the ruling of the trial court was prejudicial to the appellant or that there was an abuse of discretion. See also: Rule 45, Alabama Rules of Appellate Procedure.
 III
Appellant argues that the trial court improperly denied a motion for mistrial after the prosecutor asked the appellant, whether he had previously been put on probation, violated his probation, and been sent to the penitentiary.
The record indicates that while cross-examining the defendant the prosecutor inquired whether the defendant was convicted on May 30, 1958, in the Circuit Court of Montgomery County for disposing of mortgaged property and sentenced to eighteen months in the penitentiary. Without objection the appellant answered affirmatively. Subsequently, on recross-examination, the following transpired:
"BY MR. McGILL:
 "Q. Mr. Powell asked you about that car for which you were convicted in Montgomery County. Isn't it also a fact that you were put on probation and then violated your probation and were sent to the penitentiary, weren't you?
"A. That's right.
 "MR. POWELL: We object to that and move for a mistrial.
 "THE COURT: Sustained. Deny the motion for mistrial. The jury is instructed to disregard anything beyond the point of conviction."
Appellant's attorney then assigned grounds for a mistrial, and the trial judge once again admonished the jury to disregard the question and denied the motion for a mistrial.
A defendant, when testifying in his own behalf, may be questioned on cross-examination as to whether he has been convicted of a crime involving moral turpitude for the purpose of attacking his credibility as a witness. White v. State, Ala.Cr.App., 347 So.2d 566 (1977); § 12-21-162, Code of Ala. 1975. However, care should be exercised so as not to include an offense that *Page 560 
does not involve moral turpitude. Kennedy v. State, Ala.Cr.App., 371 So.2d 464 (1979). Whether disposing of mortgaged property is a crime involving moral turpitude is not in issue as no objection was interposed and no ruling by the trial court was elicited when that matter came into evidence. However, the matter of the probation violation is in issue. It is clear to us that a probation violation is not a "crime" of any kind and is thus not admissible per se under § 12-21-162, Code of Ala. 1975. Whether reversible error resulted from such disclosure requires further discussion.
Generally, on cross-examining a witness about his prior convictions, only inquiries about the designation of the crime, the time and place of conviction, and the punishment are proper. Conley v. State, Ala.Cr.App., 354 So.2d 1172 (1977); Gamble, McElroy's Alabama Evidence, § 145.01 (11), (3d ed. 1977). It is not permissible to go into the details of such offenses. Conley v. State supra; Ellis v. State, 244 Ala. 79,11 So.2d 861 (1943). Therefore, the prosecutor exceeded the reasonable scope of questioning when he emphasized the appellant's probation violation after already clearly establishing the conviction and the punishment.
The prosecutor's obvious objective was not to challenge the appellant's credibility as a witness, but rather to suggest to the jury that the appellant was guilty of some other improper or illegal conduct which warranted a revocation of his probation. That line of questioning violates the general rule that a witness may not be cross-examined for impeachment purposes as to specific acts of misconduct which have no relevancy except as tending to show that he is a person of bad character as a whole. McElroy's Alabama Evidence, § 140.01 (10); Hinton v. State, 280 Ala. 48, 189 So.2d 849 (1966). Yet, this does not mean a reversal is mandated in every such case.
The appellant's objection was late and not specific. White v.State, supra. Nevertheless, the court ruled in his favor on the objection. The present issue before us, therefore, concerns the trial court's ruling on the motion for a mistrial. After the appellant answered the question concerning his probation violation, his attorney made a general objection and moved for a mistrial. Defense counsel then assigned grounds for his motion for a mistrial "that the question is prejudicial, inadmissible in evidence and ineradicable." He further asserted that "it cannot be removed from the consideration of the jury by asking them to disregard it." The following then occurred:
 "THE COURT: I am going to deny the motion for a mistrial. And ladies and gentlemen of the jury, disregard and put out of your mind entirely the question by Mr. McGill about being put on probation and being revoked for violation of probation. It has no place in this trial. The only reason that the law allows him to show that he has been previously convicted of a crime, any time a witness testifies in Court, the law allows the opposing party to ask him if he has been convicted of a crime involving moral turpitude. And that is to show his veracity. And it is admitted for that reason only and anything that happened after the date of the conviction has nothing to do with any lawsuit, this one, or any other one, and you are instructed to put it completely out of your mind and disregard it for any purposes whatsoever. Any further examination by either of you gentlemen?
"MR. MCGILL: No, Your Honor.
 "MR. POWELL: You can come down. "(At which time, the witness comes down from the witness stand.)"
A trial court's ruling on a motion for a mistrial is reviewable on appeal. Stennett v. State, Ala., 340 So.2d 65
(1976). However, such a motion is addressed to the sound discretion of the trial judge, and his ruling will not be reversed in the absence of a clear showing of abuse of discretion. Shadle v. State, 280 Ala. 379, 194 So.2d 538
(1967); Heard v. State, Ala.Cr.App., 351 So.2d 686 (1977).
In the instant case we find the question of the prosecutor to have been improper and prejudicial, but not to the extent that after the trial court's strong admonition to the jury, supra, a mistrial was mandated. *Page 561 
We find no abuse of discretion on the part of the trial judge in denying the motion for a mistrial, and we likewise find that his prompt admonition to the jury adequately overcame any prejudicial effect which the prosecution's improper question might have otherwise had. Diamond v. State, Ala.Cr. App.,363 So.2d 109 (1978), May v. State, 42 Ala. App. 401, 166 So.2d 860, cert. denied, 277 Ala. 700, 166 So.2d 865 (1963).
 IV
Next, appellant submits that the trial court committed reversible error by denying repeated motions for mistrial based upon certain remarks made by the prosecutor in closing argument.
The district attorney stated, in substance, that defendant told prospective purchasers that his stock was "going to make you all rich." He also avowed "there are some things you can't ask a Defendant on the witness stand." Additionally, the prosecutor commented that defense counsel had returned to the private practice of law and "knows the law in that book." The trial court overruled defense counsel's objections to these remarks and denied appellant's motion for mistrial following the second of these statements.
The State insists that the prosecutor merely argued reasonable inferences and conclusions from the evidence. From the testimony presented, we find that there is a legitimate basis for the State's position. The appellate courts of this state have stated on innumerable occasions that there is no legal standard by which the prejudicial qualities of improper remarks of a prosecutor can be judged. Each case must be determined on its own merits. Hurst v. State, Ala.Cr.App.,365 So.2d 1224 (1978); Binion v. State, 57 Ala. App. 234,327 So.2d 729 (1975), cert. denied, 295 Ala. 391, 327 So.2d 732. "Liberal rules are allowed counsel in drawing inferences from the evidence in their arguments to the jury, whether they are truly drawn or not." Smith v. State, Ala.Cr.App., 344 So.2d 1239,1242, cert denied, Ala., 344 So.2d 1243 (1973). See also:Chambers v. State, Ala.Cr.App., 382 So.2d 632, cert. denied, Ala., 382 So.2d 636 (1980).
A prosecutor "may argue every legitimate inference from the evidence and may examine, collate, sift, and treat the evidence in his own way." Williams v. State, Ala.Cr.App., 377 So.2d 634,639, cert. denied, Ala., 377 So.2d 639 (1979); White v. State,41 Ala. App. 54, 123 So.2d 179, cert. denied, 271 Ala. 702,123 So.2d 186 (1960). Argument by the prosecution concerning omissions and inconsistencies as affecting the credibility of witnesses and many other considerations is a proper subject for criticism and discussion. Speigner v. State, Ala. Cr.App.,369 So.2d 39, cert. denied, Ala., 369 So.2d 46 (1979); Smith v.State, supra.
Based on the evidence in the record, we believe the disputed comments made by the prosecutor during closing argument were well within the bounds of permissible inference and the objections thereto were properly overruled.
Appellant also objected to another statement of the district attorney during closing argument to the effect that the appellant "has probably got a good pitch for selling it." The court sustained the objection to this remark, but overruled a renewed motion for mistrial by defense counsel. The trial judge voluntarily instructed the jury to disregard this comment.
We agree that it was proper, in light of the facts in this case, to sustain the objection to this remark. However, "when prejudicial remarks have been made, the trial judge is in a better position than an appellate court to determine whether the remarks were so prejudicial as to be ineradicable."Chambers v. State, supra; McAllister v. State, 44 Ala. App. 511,214 So.2d 862 (1968); Evans v. State, 42 Ala. App. 587,172 So.2d 796 (1965). Moreover, there is a "prima facie presumption against error where the trial court immediately charges the jury to disregard the prosecutor's improper remarks." Chambersv. State, supra; Nix v. State, Ala.Cr.App., 370 So.2d 1115, cert. denied, Ala., 370 So.2d 1119 (1979). Therefore, we are convinced that *Page 562 
the "poison of improper argument" did not infect the verdict of the jury in this case. Chambers v. State, supra. A mistrial was not mandated. Diamond v. State, supra.
 V
Finally, appellant urges this court to determine the constitutionality of the Alabama Securities Act. It is argued that certain sections therein are so vague, indefinite, and uncertain as to violate the Constitution of the United States and the Constitution of Alabama. More particularly, appellant attests that "willfully" and "scienter" as used in §§ 8-6-18
(a), (e), Code of Ala. 1975, are contradictory terms, and that the trial judge erred when he charged the jury that scienter need not be alleged and proven. Appellant further insists that the definition of "security" in § 8-6-2 (10) is so broad that virtually any business transaction other than a cash sale falls under the umbrella of the Act.
 A
The disputed subsections of the criminal penalty provision read in part as follows:
 "(a) Any person who willfully violates any provisions of this article shall, upon conviction, be fined not more than $15,000.00 or imprisoned not more than ten years, or both. . . .
. . . . .
 "(e) In any proceeding under this article, scienter need not be alleged and proved in prosecutions involving the sale of unregistered securities or in the failure to register as a dealer or salesman under this article."
Section 8-6-18 (e) specifically limits its application to selling unregistered securities and failing to register as a securities dealer.
Appellant argues that the contradictory terminology of §8-6-18 makes it impossible to know whether criminal intent must be proven in prosecutions under this statute, and he relies on the posture of this court in Van Antwerp v. State, Ala.Cr.App.,358 So.2d 782 (1978), cert. denied, Ala., 358 So.2d 791. However, Van Antwerp is distinguishable from the case at bar. That case dealt with violations of the securities fraud
provision of the Alabama Securities Act (§ 8-6-17). In any type of fraud case, it is essential to prove "scienter" or guilty knowledge because it is an element of the crime itself. Therefore, in securities fraud cases, "willfully" in subsection (a) necessarily "requires proof of the guilty knowledge or mens rea." Van Antwerp v. State, supra, at 786. See: Dixon v. State,40 Ala. App. 465, 115 So.2d 262, reversed on other grounds,269 Ala. 593, 115 So.2d 369 (1958) and 269 Ala. 548, 115 So.2d 270
(1959).
Nonetheless, in the present case we are dealing with the sale of unregistered securities and the failure to register as a securities dealer, §§ 8-6-3 (a), 8-6-4. Subsection (e) of §8-6-18 expressly indicates that the legislature did not intend for "scienter" to be an element of these offenses. We believe subsection (e) reflects the legislature's intention for these offenses to be mala prohibita rather than mala in se. In Smithv. State, 223 Ala. 346, 347, 136 So.2d 270 (1931), our supreme court stated:
 "Generally speaking, when an act is prohibited and made punishable by statute only, the statute is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, even when in terms not required. The Legislature, however, may forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer, and, if such legislative intention appears, the courts must give it effect, although the intent of the doer may have been innocent. This rule has been generally, though not quite universally, applied to the enforcement of statutes passed in aid of the police power of the state where the word `knowingly' or other apt words are not employed to indicate that knowledge is an essential element of the crime charged. The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted and knowledge or ignorance of its criminal character are immaterial *Page 563 
circumstances on the question of guilt. Whether or not in a given case a statute is to be so construed is to be determined by the court by considering the subject-matter of the prohibition as well as the language of the statute, and thus ascertaining the intention of the Legislature. Whatever may be the true construction of the statute, when, with a knowledge of all the facts, one deliberately violates a positive law which he is presumed to know, he cannot be excused on the ground that he intended no wrong. But the rule applies only to unlawful acts which are voluntary and in that sense intentionally done. . . ."
There is great risk of serious financial injury to the investing public in the highly specialized field of securities transactions, and all sellers of securities are charged with knowledge of and compliance with all statutes and regulations governing such sales. It is our conclusion that specific criminal intent or guilty knowledge that the law is being violated is not required in order to find criminal violations of §§ 8-6-3 (a), 8-6-4. To the contrary, all that is required by statute is that the State prove the defendant acted "willfully" in the sense that he was aware of what he was doing. Appellant's contention that these sections are unconstitutional is without merit, nor did the trial court err by charging that scienter need not be alleged and proven in prosecutions under these specific sections.
 B
Lastly, appellant's argument that the definitional section of the Alabama Securities Act, § 8-6-2 (10), is unconstitutionally vague is also without merit. We find that the transactions involved here meet the Howey test for defining "investment contracts:"
 "[A]n investment contract . . . means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party. . . ."
 Securities and Exchange Commission v. W.J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244
(1946).
The Alabama Supreme Court adopted that test in Gallion v.Alabama Market Centers, Inc., 282 Ala. 679, 213 So.2d 841
(1968), and also reaffirmed it for past transactions in the recent case of Burke v. State, Ala., 385 So.2d 648 [1980], although a different test more favorable to the prosecution was adopted prospectively in Burke. Since an "investment contract" is a "security" under § 8-6-2 (10), we find that no valid constitutional grounds are raised on the issue of definitional vagueness.
We have searched the record as required by law and find no reversible error.
AFFIRMED.
All the Judges concur.
[1] Five indictments were actually returned against appellant. However, the fifth was entered upon the record as a directed verdict for the defendant because of the failure of the State to prosecute.