Ronald Anthony Morton was indicted for sodomy in the first degree in violation of § 13A-6-63, Code of Alabama 1975, sexual abuse in the first degree in violation of § 13A-6-66, Code of Alabama 1975, and child abuse in violation of § 26-15-3, Code of Alabama 1975. He was found "guilty as charged in the indictment." He was sentenced to 15 years in prison for the sodomy conviction and 10 years for the other two convictions to run concurrently with the 15 year sentence. He raises four issues on appeal.
The record reveals that E.G. was four-years old at the time of the abuse. She attended the Head Start program. Joette Whitlow was her teacher. Whitlow testified that E.G. was normally energetic and cheerful. One day in February 1988, however, E.G. was withdrawn and cried most of the day. She would not eat breakfast or tell Whitlow why she was crying. E.G. told Whitlow that she was itchy and indicated that she wanted Whitlow to scratch her back. E.G. told Whitlow that she was "itching all over." (R. 17.) Whitlow took E.G. to the social worker to find out what was wrong. Whitlow testified that E.G. made a complaint to her about sexual contact later that day.
Scarlett David, a social worker for Head Start, testified that E.G. was brought to her office on February 22, 1988. E.G. was crying and said she was itching. She further testified that E.G. was scratching herself all over her body but that she did not have any kind of rash. David also looked at E.G.'s vaginal area. She testified that E.G.'s vaginal area was a little red and swollen. E.G. indicated that she had some discomfort in that area. She called E.G.'s family and talked to a woman who said she was E.G.'s cousin. That woman came to the school and picked E.G. up. David further testified that E.G. walked with a limp when she left her office and that she had never seen her walk that way before.
E.G.'s mother testified that the appellant was E.G.'s father. E.G. was living with her father in February 1988. She had been living with her father and her grandmother for approximately four weeks. E.G.'s mother was having financial problems. She had two other children including a 14-year-old son and an 11-year-old daughter.
E.G.'s mother testified that she had taken E.G. to church on Sunday, February 21, 1988, and that E.G. was fine at that time. She brought her back to her grandmother's house after getting something to eat. She further testified that she had seen E.G. on February 22, 23, and 24 and that E.G. was not acting like herself. She stated that on February 24, E.G. was distant to her. When she called to check on E.G. on February 25, E.G.'s grandmother told her that the school had called, and she immediately went to the school. The principal told her to go to Children's Hospital, which she did. She talked to a doctor and a social worker at the hospital. After leaving the hospital, she went to pick up E.G. E.G. acted very strange. E.G.'s mother testified that a social *Page 564 
worker arrived while she was at E.G.'s grandmother's house and talked to her for 20 to 30 minutes. She then turned E.G. over to the State at that time.
Mary McGrimmon, a child welfare worker with the Jefferson County Department of Human Resources (DHR), testified that she received a call concerning E.G. on February 25, 1988. She took E.G. to Children's Hospital and talked with a social worker. She then went to E.G.'s grandmother's house and talked with E.G.'s mother. E.G.'s mother consented to the State's taking custody of the child. The case was transferred to Faye Liles, a social worker with DHR, the next day.
Liles first saw E.G. on February 26, 1988. Liles testified that when she asked her "Do you know why I'm here?" E.G. made a complaint. (R. 74.)
E.G. was six-years old at the time of the trial. She testified, in substance, that her father came into her room one night and closed the door. He got on top of her and pulled her pants down. He turned her over so that she was lying on her stomach. He put his "private parts" in her "private part." (R. 83.) He turned her back over and did it again. He then put his "private part" in her mouth. (R. 84.) She tasted something wet and then spit out a white substance. She testified that the appellant then put his hand over her mouth so she could not scream. He told her to "shut up" or she would never see her mother again. (R. 85-86.) She further testified that her grandmother came into the room, put her hand over her mouth and said, "Oh my God." (R. 86.) E.G. testified that the appellant told her to say that her brother had done it. She further testified that she told the doctor that her brother did it, but that her brother had not done anything to her.
Nancy Payne, a clinical social worker for Family and Child Services, testified that she worked with E.G. in therapy beginning on March 2, 1988. She saw her 14 times. She testified that E.G. exhibited extreme behavior that is common in sexually abused children. She testified that while playing with a dollhouse and dolls, E.G. talked about a little girl with her father on top of her and her grandmother coming in the room and screaming. The State rested at the end of this testimony. The appellant's motion for judgment of acquittal was denied.
The appellant called E.G.'s mother as a defense witness. She testified that she had not seen E.G. between the time she brought her home from church on Sunday until Thursday, February 25. Although she saw E.G. on Wednesday, E.G. was asleep.
Ella Morton, the appellant's mother, testified that the appellant and E.G. were living with her in February 1988. At that time she did "sitting work" and worked from 11:00 p.m. until 7:00 a.m. (R. 161.) She testified that when she left for work on Sunday night, E.G.'s mother had not brought her back yet. She testified that she did not notice anything wrong with E.G. on Monday afternoon after the school called and told her to pick E.G. up. She testified that she never saw the appellant in bed with E.G.
The appellant testified that he was living with his mother in 1988. In February 1988, he lived with his mother, Joyce Bell, and E.G. He testified that E.G. was living with him permanently and that E.G.'s mother brought her home around 9:00 p.m. Sunday evening. He testified that he talked to someone from E.G.'s school the next day and as a result, he sent Joyce Bell to pick her up. As a result of a conversation he had with Joyce Bell, he took E.G. to the doctor that evening. He took E.G. to Children's Hospital because Community Hospital told him it did not have the facilities to accommodate her. He testified that he had never touched or fondled E.G. He further testified that E.G. complained about her "bottom" on Monday night when Joyce Bell was giving her a bath. (R. 185.) E.G. told Bell that her brother would bother her when her mother left them alone.
On rebuttal, Joette Whitlow testified that on the day that she came to school itching, E.G. told her, in substance, that her father had put his "private part" in her mouth. *Page 565 
 I
The appellant contends that the trial court erred in failing to grant his motion to dismiss the indictments because they failed to allege specific facts. Although the appellant challenges all of the indictments, he specifically argues that the child abuse indictment is faulty because it describes the abuse only as sexual abuse and does not include a date more specific than February 1988. We disagree.
An indictment "must contain the elements of the offense intended to be charged and sufficiently appraise the defendant of what he must be prepared to meet." Chambers v. State,364 So.2d 416, 419 (Ala.Crim.App.), cert. denied, 364 So.2d 420
(Ala. 1978). It is not, however, necessary for the indictment to set up the proof necessary for a conviction. Copeland v.State, 456 So.2d 1150 (Ala.Crim.App. 1984). An indictment is generally not void for vagueness because it fails to state the precise time an offense was committed. Williams v. State,548 So.2d 584 (Ala.Crim.App. 1988). Furthermore, it is unnecessary to allege the date and time of an offense unless the date and time are material ingredients of the offense.Stout v. State, 547 So.2d 894 (Ala.Crim.App. 1988), aff'd,547 So.2d 901 (Ala. 1989); Carroll v. State, 440 So.2d 1168
(Ala.Crim.App. 1983). We find that the trial court did not err in denying the appellant's motion to dismiss the child abuse indictment. See, e.g., Hewlett v. State, 520 So.2d 200
(Ala.Crim.App. 1987); Chambers.
We have carefully reviewed all of the indictments and find that they were sufficient in their allegations "(1) to identify the accusation lest the accused be tried for an offense different from that intended by the grand jury, (2) to enable the defendant to prepare for his defense, (3) to allow the judgment to protect the defendant and foreclose the possibility of being twice put in jeopardy for the same offense, and (4) to enable the trial court after conviction to pronounce judgment on the record." Chambers, 364 So.2d at 419-20. We also note that the indictments track the language of the relevant statutes. "An indictment is sufficient which substantially follows the language of the statute, provided the statute prescribes with definiteness the constituents of the offense."Copeland at 1151 (quoting Ex parte Allred, 393 So.2d 1030, 1032
(Ala. 1980)). The appellant does not challenge the statutes. Furthermore, we have already stated that the indictments sufficiently notified the appellant of the charges against him.
 II
The appellant next contends that the trial court erred in denying his motion for mistrial when E.G.'s mother began to testify on cross-examination about an incident that occurred between her and the appellant on February 25. She first testified that she hit the appellant and that they fought. She then began to testify that the appellant put a knife to her neck. The trial court denied the appellant's motion for a mistrial and gave prompt, curative instructions to the jury.
"The granting of a mistrial is an extreme measure and should be exercised only when manifestly necessary or when the ends of justice would otherwise be defeated." Free v. State,495 So.2d 1147, 1157 (Ala.Crim.App. 1986). The grant or denial of a motion for mistrial lies within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. Free; Favor v. State, 389 So.2d 556
(Ala.Crim.App. 1980). There is a prima facie presumption against error when the trial court immediately charges the jury to disregard the improper remarks. Desimer v. State, 535 So.2d 238
(Ala.Crim.App. 1988); Dixon v. State, 476 So.2d 1236
(Ala.Crim.App. 1985); and Woods v. State, 460 So.2d 291 (Ala.Crim.App. 1984). The trial court is in the best position to determine whether improper remarks are so prejudicial as to be ineradicable. Favor. We find that the improper statement did not create such prejudice that it was not eradicated by proper instructions. See, e.g., Brasher v. State, 555 So.2d 184
(Ala.Crim.App. 1988), aff'd, 555 So.2d 192 (Ala. 1989) (in sexual abuse case, prosecutor's question concerning the defendant's *Page 566 
molestation of victim's sister was eradicated by trial court's curative instructions to disregard); and Nathan v. State,436 So.2d 19 (Ala.Crim.App. 1983) (any prejudice arising from prosecutor's statement in child abuse case that another of defendant's children had died was eradicated by trial court's instruction to jury to disregard). Thus, the trial court did not err in denying the motion for mistrial.
 III
The appellant next contends that the trial court erred in denying his motions for judgment of acquittal at the close of the State's evidence and at the conclusion of the trial. He bases this contention on the demeanor of the State's witnesses, their answers on cross-examination, and their reluctance to discuss certain matters. It is clear from our discussion of the evidence that the State presented sufficient evidence for a conviction. The appellant's argument is based on the weight of the evidence and the credibility of the witnesses. "The weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and the inferences to be drawn from the evidence, even where susceptible to more than one rational conclusion, are for the jury." Ward v. State, 356 So.2d 238, 240
(Ala.Crim.App.), cert. denied, 356 So.2d 242 (Ala. 1978). See alsoWhite v. State, 546 So.2d 1014 (Ala.Crim.App. 1989); Currinv. State, 535 So.2d 221 (Ala.Crim.App.), cert. denied,535 So.2d 225 (Ala. 1988). The effect of inconsistent and contradictory statements, even when made by the same witness, goes to credibility and presents a question for the jury.Cannon v. State, 518 So.2d 872 (Ala.Crim.App. 1987).
The role of this court is to determine whether the evidence was legally sufficient and not to decide the facts of the case.White. We find that the case was properly submitted to the jury and that the evidence is sufficient to sustain the conviction.
 IV
The appellant contends that the trial court erred in allowing Joette Whitlow to testify on rebuttal as to E.G.'s complaint to her by E.G. He contends that the testimony was not proper rebuttal evidence because it did not rebut any testimony presented by the defense and because the substance of the testimony had not been provided to the appellant pursuant to his discovery requests.
The appellant's contention that the testimony was not proper rebuttal was not preserved for review. The appellant objected to the testimony, stating that "[t]here is no proof that this is the first complaint." (R. 199.) Specific objections waive all grounds not stated. Hargrove v. State, 344 So.2d 823
(Ala.Crim.App.), cert. denied, 344 So.2d 826 (Ala. 1977).
The appellant later moved to strike the testimony because it had not been produced pursuant to the appellant's discovery request. The trial court denied the motion. A defendant does not have a constitutional right to discovery in a criminal case. Scroggin v. State, 529 So.2d 1025 (Ala.Crim.App. 1988).See also Clifton v. State, 545 So.2d 173 (Ala.Crim.App. 1988). Thus, this court must look to the court's discovery order to determine any discovery rights. Clifton. There is not a discovery order in the record. Furthermore, assuming that there was such an order and that it was violated by the State, the imposition of sanctions for noncompliance with a discovery order rests within the trial court's discretion. Fortenberry v.State, 545 So.2d 129 (Ala.Crim.App. 1988), aff'd,545 So.2d 145 (Ala. 1989). We also note that the evidence was not exculpatory and thus no Brady v. Maryland, 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), analysis is required. The appellant's right to a fair and impartial trial was not prejudiced by the nondisclosure of the evidence. See Clifton;Fortenberry.
For the reasons set forth above, this case is due to be, and hereby is affirmed.
AFFIRMED.
All the Judges concur. *Page 567