On Second Return to Remand

COBB, Judge.
Willie Gibson was indicted for rape in the first degree, a violation of § 13A-6-61, Code of Alabama 1975. A jury found the appellant guilty of this offense and he was sentenced to 40 years’ imprisonment. The victim in this case, L.F., was the appellant’s daughter and she was 13 when the incident that is the basis of this charge occurred. The evidence showed that on June 5 or 6,1991, L.F. was at home with the appellant and her two younger brothers. The appellant told L.F. to go into her mother’s room and to remove her clothes. Although L.F. did not want to do so, the appellant made her. The appellant then undressed and rubbed his hands all over her body. He then placed his penis inside L.F. for a few minutes. She said that when he removed it, he put “white stuff’ on her stomach. L.F. testified that this was not the first time that the appellant had done this. On June 8, 1991, L.F. told her mother and her mother took her to the hospital.
The appellant denied committing the offense and said that someone else had had sexual relations with L.F.
I
On June 17,1994, this cause was remanded to the circuit court with directions that the court conduct an in camera inspection of the victim’s Department of Human Resources files to determine whether those files contain any exculpatory information. 677 So.2d 233 (Ala.Crim.App.1994). On remand, the trial court found that “out of abundance of caution and giving the defendant the benefit of the doubt, I would hold and do find that there is exculpatory material contained in those files.” This court again remanded this cause to the circuit court because the court had failed to determine whether this exculpatory evidence was material. 677 So.2d 236 (Ala.Crim.App.1995).
On the second remand, the circuit court made the following findings:
“The State prosecuted the Defendant for the first degree rape of his teenage daughter. Testifying at trial in his own behalf, the Defendant denied that he committed the acts earlier described by the child. He contended that his daughter fabricated this story because (a) he and his wife were too strict on her, and she wanted out of their home; (b) peer pressure from the child’s friends motivated her to make these accusations; (c) the child was trying to cover up sexual activity with a boyfriend; or (d) the child made the accusations at the urging of her mother’s family members who did not like the Defendant.
“After close inspection of the DHR file in issue, the Court finds absolutely no evidence which is either exculpatory or material to the defense theories designated above as (a), (b) and (c). The DHR file as a whole is extremely inculpatory. It corroborates the victim’s testimony and, had the State chosen to do so over DHR’s objection, could have been used successfully to impeach the credibility of the victim’s mother who served as the Defendant’s key witness at trial.
“Giving the Defendant all benefit of the doubt, the only conceivable exculpatory material in the DHR file consists of the victim’s brief, but strong, statement to a DHR caseworker about her feelings toward the Defendant:
‘“We asked [the victim] how she felt about Mr. Gibson. She said that she did not like him. She told us that she had not liked him from the time she was little because he told her mother when she was an infant that she was not his child. She told us she never called him daddy, but rather always called him “Gip.” ’
“While being cross-examined during the trial, the Defendant charged his wife’s family with making statements that the victim was not his child. Perhaps the above-quoted statements are somehow related to his defense theory designated above as (d).
“Having attempted to rationalize how the Defendant might have used this exculpatory information to his benefit, the *240 Court is not satisfied that, in all reasonable probability, the jury would have acquitted him had this information been disclosed.
“Under cross-examination by defense counsel, the intensity of the victim’s feeling toward the Defendant surfaced when she described him as a low down dirty person and stated that she did not like him. The Defendant had an opportunity to explore the reasons for these strong feelings, but did not do so. Whatever the reasons, the victim’s clear dislike of the Defendant supported his suggestion that she had been coached by his in-laws who bore the same ill feelings toward him. The DHR statements quoted above would not have aided the Defendant because they merely set forth what the victim admitted in so many words on the witness stand and what the Defendant and his wife told the jury during their testimony.
“The jury obviously did not believe any of the reasons asserted by the Defendant as to why the victim fabricated her rape accusations. That the Defendant did not have access to the exculpatory material quoted above does not undermine the Court’s confidence in the Jury’s verdict. It is reasonably probable that even if the jury believed the victim’s strong dislike for her father, they still would have determined beyond a reasonable doubt that he raped her as she described in such vivid detail.
“In accordance with the directions of the Court of Criminal Appeals and based upon the findings discussed above, this Court returns it conclusion that any exculpatory evidence contained in the DHR file was not material to the Defendant’s guilt or punishment; that is, had such evidence been disclosed to the defense, there is no reasonable probability that the jury’s guilty verdict would have been different or the Defendant’s punishment reduced.”
After our review of the trial court’s order and the DHR files in this case, we conclude that the trial court correctly found that any exculpatory evidence contained in the DHR files was not material to the appellant’s guilt or punishment. The trial court did not abuse its discretion in this instance. Kirby v. State, 581 So.2d 1136 (Ala.Crim.App.1990).
II
After the victim testified about the incident charged in the indictment, she testified about other instances of sexual misconduct committed against her by the appellant. The appellant claims that evidence of these collateral acts should not have been admitted.
The victim’s testimony concerning these other offenses was properly admitted as evidence of motive. Bowden v. State, 538 So.2d 1226 (Ala.1988). This evidence ‘“went to show the existence of relations between her and the defendant which tended to make the commission of the act of a similar nature ... more probable, and so to confirm her previous testimony.’ ” Bowden, 538 So.2d at 1235 (quoting Deason v. State, 363 So.2d 1001, 1004-05 (Ala.1978)).
Further, the appellant claimed that someone else committed the offense with which he was charged, putting identity at issue. Therefore, because identity was at issue, the evidence of the collateral acts allegedly committed by the appellant would have been admissible to establish identity. Bowden.

Ill

Following the presentation of the evidence in this case, the appellant moved for judgment of acquittal.
“The appellant’s argument is based on the weight of the evidence and the credibility of the witnesses. ‘The weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and the inferences to be drawn from the evidence, even where susceptible to more than one rational conclusion, are for the jury.’ Ward v. State, 356 So.2d 238, 240 (Ala.Crim.App.), cert. denied, 356 So.2d 242 (Ala.1978). See also White v. State, 546 So.2d 1014 (Ala.Crim.App.1989); Currin v. State, 535 So.2d 221 (Ala.Crim.App.), cert. denied, 535 So.2d 225 (Ala.1988). The effect of inconsistent and contradictory statements, even when made by the same witness, goes to credi *241 bility and presents a question for the jury. Cannon v. State, 518 So.2d 872 (Ala.Crim.App.1987).”
Morton v. State, 581 So.2d 562 (Ala.Crim.App.1991).
IV
One of the State’s witnesses in this case was Wanda Jones, the victim’s aunt. The victim went to live with Jones after the victim reported the rape to her mother. She was still living with Jones at the time of the trial. During cross-examination of Jones, the following occurred:
“Q. [Defense counsel] And you said that — That they would never let [the victim] come over and spend the night.
“A. Neither. Tiffany nor her. Neither one of them.
“Q. Neither one of them.
“A. Yes.
“Q. Okay. Well, did Fred and Ernest hang around at your house? Do they live in that same house, too?
“A. No, they do not.
“Q. Okay. Do you have close contacts with Fred and Ernest?
“A. Yes, I see them almost every — every other day.
“Q. They come over to your house?
“A. No. Well, I just live across — down the street and around the comer from them, so I can — •
“Q. Well, when [the victim] is over there do they — do y’all go down there to Fred and Ernest’s place or do they come up and visit—
“MR. WEATHERS: [prosecutor] Judge, I’m going to object. It is immaterial to what Fred and Ernest do.
[[Image here]]
“MR. WEATHERS: Judge, I had an objection—
“THE COURT: I know. He was forming an objection. I wanted to hear what his response was.
“MR. POWELL: [defense counsel] Well, Judge, I am attempting to show one reason why [the victim] was not allowed to go over to this house, and one of the reasons was Fred and Ernest F.
“MR. WEATHERS: Judge, again the same objection.
“THE COURT: I’m going to sustain unless you show me a different theory.”
(R. 180-81.) Defense counsel contends that the trial court improperly refused to allow him to question Jones about the reason the victim was not allowed to visit Jones’s house before she went to live with Jones. Defense counsel contends on appeal that the reason the victim was not allowed to visit Jones was because her uncles, Fred and Ernest, had been charged on several occasions with drug offenses. He argues he should have been allowed to ask this witness about the drug charges.
This issue, however, was not preserved for our review. When the trial court stated that it was sustaining the objection unless the appellant established the relevancy of his question, defense counsel did not object to the trial court’s ruling and did not make an offer of proof. Defense counsel never told the trial court that he wished to ask Jones whether she knew that the reason the victim was not allowed to visit was because Fred and Ernest were involved in drugs. Therefore, this issue was not preserved for review. Freeman v. State, 453 So.2d 776 (Ala.Crim.App.1984).
Jones later testified that she never had a conversation with the appellant or her sister concerning the reason the victim was not allowed to visit. Further, the appellant testified that he did not want the victim to visit Jones’s house because Fred and Ernest had been charged with drug offenses. Therefore, the information the appellant claims the trial court improperly excluded was presented to the jury.
V
The following occurred during the cross-examination of Investigator Jep Tal-lent:
“Q. [defense counsel] All right. Do you remember talking to Mr. Gibson here — Do you remember when the murder took place out on Moulton Street, the two elderly *242 senior citizen ladies that were in the house and one of them got stabbed?
“A. Yes, Ido.
“Q. When did that happen? About what date?
“A. Sometime after this had all been investigated. I would have to go back and check the records.
“Q. Well, they arrested the wrong man, did they not?
“MR. WEATHERS: [prosecutor] Judge, I object to that. Mr. Powell knows that is immaterial, and the only reason he is doing that is for—
“MR. POWELL [defense counsel]: No, I can tie it up, Your Honor, if you will just allow me to. I was just going to ask the officer if he talked to him, to the Defendant about it.
“A. Yes, I did.
“Q. (By Mr. Powell) Did you offer to help him out if he would help you out?
“MR. WEATHERS: Judge, again an objection to materiality. We’re not trying no murder case that took place out there. We’re trying a rape of a young girl.
“THE COURT: I’ll sustain as to form of that question. I don’t know exactly what it means.”
(R. 227-28.)
“Defense counsel made no offer of proof to show the substance of the witness’s expected testimony. In order to review a ruling sustaining an objection to a question which does not on its face show what is the expected answer, attention must be called to the proposed answer and it must be shown that such answer was relevant and admissible. Davis v. Davis, 474 So.2d 654, 656 (Ala.1985); McElroy at § 425.01(4).”
Bracewell v. State, 506 So.2d 354 (Ala.Crim.App.1986). Defense counsel did not inform the trial court as to what he believed the answer to his question would be or what relevance the answer would be to the case at bar. Therefore, this issue is procedurally barred.
VI
After the court’s oral charge to the jury, defense counsel asked the court to instruct the jury on the offense of sexual abuse. This issue was not preserved for review. The objection came after the jury had retired and, therefore, the objection came too late. Snell v. State, 565 So.2d 265 (Ala.Crim.App.1989), rev’d on other grounds. Further, defense counsel failed to specify which section or sections of the sexual abuse statute he wanted the court to give as instructions. Stennet v. State, 564 So.2d 95 (Ala.Crim.App.1990). This issue is proeedurally barred from review.
AFFIRMED.
All the Judges concur.